COMMONWEALTH vs. MANUEL CARRASCO
(and four companion cases[1]).

Essex. March 6, 1989. — July 6, 1989.

Present: WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Controlled Substances. Probable Cause. Search and Seizure*, Probable
cause, Affidavit, Warrant, Multiple-occupancy structure. *Constitutional
Law*, Probable cause, Search and seizure.

The affidavit of a police officer who had spoken with an anonymous inform-
ant contained enough evidence of illegal activity to establish probable
cause under art. 14 of the Declaration of Rights of the Massachusetts
Constitution for the issuance of a warrant to search the second-floor
apartment of a certain dwelling in which drugs, drug paraphernalia, a
firearm, and other items were subsequently seized, where the affidavit
reported the informant's statement that he or she "on numerous occa-
sions" observed heroin for sale in the second-floor apartment; and where,
although the informant had never previously given information to the
police, his or her veracity was demonstrated on the face of the affidavit
by independent police corroboration of detailed information provided
by the informant; consequently, the affidavit also satisfied G. L. c. 276,
§§ 1-3A, and the less stringent "totality-of-the-circumstances" standard
under the Fourth Amendment to the United States Constitution. [320-322]
A warrant describing premises to be searched as the second floor of a certain
dwelling, when in fact the second floor included two distinct apartments
with different occupants, was not invalid under the Fourth Amendment
to the United States Constitution, where the police officer who applied
for and executed the warrant did not know or have reason to know that
there were two apartments on the second floor; where there were no
circumstances to put the police on notice to inquire whether there were
two apartments on the second floor; and where the police, proceeding
on an informant's information with respect to the second floor, were
not required to risk disclosure of their surveillance, and thereby jeopar-
dize their investigation, by going to the second floor or otherwise inquir-
ing of the owner or occupants of the building, before applying for the
warrant. [322-325]
There was no merit to the contention of criminal defendants that a judge
erred in concluding that the police who entered their apartment with a
search warrant had complied with the so-called "knock and announce"
rule, where the judge found that the police had made their presence

[1] One against Manuel Carrasco and three against Nelly Rincon Rodriguez.

known to the defendants before forcing their way into the defendants' apartment. [325]

INDICTMENTS found and returned in the Superior Court Department on December 14, 1983.

A pretrial motion to suppress evidence was heard by *Katherine Liacos Izzo*, J., and the cases were heard by *Ernest S. Hayeck*, J., sitting under statutory authority, on a statement of agreed facts.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

The case was submitted on briefs.

*Kevin M. Burke*, District Attorney, & *Elin H. Graydon*, Assistant District Attorney, for the Commonwealth.

*Ronald Ian Segal* for the defendants.

O'CONNOR, J. The defendants were convicted of possession with intent to distribute a class A controlled substance, heroin, and possession with intent to distribute a class B controlled substance, cocaine, in violation of G. L. c. 94C (1986 ed.). The defendant Rodriguez also was convicted of possessing a handgun without a license in violation of G. L. c. 269, § 10 (1986 ed.). The defendants contest only the denial of their motions to suppress evidence consisting of drugs, drug paraphernalia, a firearm, and other items seized by the police during a search of the defendants' apartment. We affirm the convictions.

The challenged search and seizure were based on a search warrant which, in turn, was based on an application supported by an affidavit submitted by State Trooper Donna Nicolosi. The affidavit, dated November 29, 1983, set forth the following facts. On November 22, 1983, a confidential informant, who had never previously given information to the police, told Trooper Nicolosi that an Hispanic male and his wife resided on the second floor at 83 Franklin Street, Lynn, a greyish-blue wooden house with white trim. The informant told Nicolosi that every three to four days the man and his wife made trips into Boston in a green Chevrolet Malibu automobile with a temporary Florida registration plate to pick up bundles of heroin. The informant said that the couple sold the heroin in

quantities of ten bundles or more to persons in Lynn who then sold bags and bundles on a smaller scale to addicts. The affidavit further stated that the informant had given Nicolosi the names of three people to whom the Hispanic couple had sold heroin, and that Nicolosi knew those individuals to be heroin dealers.

According to Trooper Nicolosi's affidavit, the informant had told her that the usual method of transferring the heroin from Franklin Street to the dealers and others was "by way of a [H]ispanic male who operates a white over blue Oldsmobile, Mass. registration # 334-GSA." The informant also told Nicolosi that the informant knew when a shipment of heroin was received "because the [H]ispanic male mentioned above appears at the residence, sometimes in the company of a white female with long brown hair" whom the informant had seen operating "a maroon Trans Am Mass. registration # 659-698." The affidavit stated that the informant had claimed to have "observed large quantities of glassine packages being offered for sale by the [H]ispanic couple as heroin in the second floor apartment of 83 Franklin Street on numerous occasions," and that, according to the informant, the drug sales were regular and continuing.

Trooper Nicolosi's affidavit also stated that, based on the informant's disclosures, she initiated an investigation of "the second floor apartment on 83 Franklin Street." The investigation confirmed the informant's description of the outside of 83 Franklin Street. It also revealed that a green automobile with a temporary Florida registration plate was parked in front of the building. In addition, "[t]wo [H]ispanics were observed on the second floor balcony, one at each end, visually scanning the length of the street." According to the affidavit, on November 23, 1983, Trooper Greg Dern advised Nicolosi that, while conducting a surveillance of 83 Franklin Street, he had seen "the white over blue" Oldsmobile, Massachusetts registration 334-GSA, and he also saw three Hispanic persons leave 83 Franklin Street. Dern knew one of those individuals to be Eduardo Saldana, also known as "Pepito." Saldana was the operator of the Oldsmobile. Nicolosi's affidavit stated that, on

October 14, 1983, Saldana had been arrested by Trooper Al Manzi and Nicolosi for a violation of the Controlled Substances Act, and that Saldana was known by Nicolosi as a heroin user and dealer. On November 29, 1983, according to her affidavit, Trooper Nicolosi and Dern observed "Pepito" and the previously mentioned white female drive up to 83 Franklin Street and enter the building. This suggested that a shipment of heroin had been received and was located in "the second floor apartment of 83 Franklin Street, Lynn, Mass."

The warrant that was issued pursuant to Trooper Nicolosi's application commanded an immediate search of "83 Franklin Street, 2nd floor, three and one-half story wooden structure, grayish blue, multi family with white trim (occupied by Jesus (L.N.U.))," and of any person at that location, for "[w]hite powder substances believed to be Heroin and Cocaine, scales, notes, records of drug sales, cutting agents, money derived from the sale of controlled substances, or intended for use in the sale of controlled substances, weapons illegally kept in connection with drug sales, and any and all paraph[er]nalia used in the sale and use of controlled substances."

On the basis of evidence presented at the suppression hearing, the judge found that the main entrance of 83 Franklin Street leads to a foyer which is between two unlocked doors and contains six mailboxes. The second floor comprises two apartments, numbers 3 and 4. The door to apartment number 3 is at the top of the stairs adjacent to the door to apartment number 4, which is at the right of the stairs.

The judge also found the following facts. At approximately 8:30 P.M. on November 29, 1983, Trooper Nicolosi went with a team of officers to the second floor at 83 Franklin Street. Trooper Nicolosi had possession of the warrant. Three officers stationed themselves at the door at the top of the stairs, and three at the door to the right, all with guns drawn. According to Trooper Nicolosi (which testimony the judge appears to have credited),[2] the officers knocked on both doors simultane-

---

[2] In the Superior Court, the defendants argued, as they do on appeal, that the officers violated the "knock and announce" rule. See *Commonwealth v. Cundriff*, 382 Mass. 137, 140 (1980), cert. denied, 451 U.S. 973 (1981). In her memorandum of decision on the defendants' motion to suppress, the

ously and announced, "State police, open door!" At the sound of running footsteps inside the door to the right, the officers forced open both doors.

The door at the top of the stairs opened first. That apartment was occupied, but it was not occupied by the defendants. One of the occupants heard someone tell him "not to worry," and another occupant heard the words, "It was a mistake."

The adjacent apartment was occupied by the defendants and Eduardo Saldana. The police entered and searched that apartment and seized the items which the defendants seek to have suppressed. On appeal, the defendants challenge the denial of their suppression motions on three grounds.

The defendants' first contention is that the search warrant was issued without a sufficient showing of probable cause, in violation of the Fourth Amendment to the United States Constitution, art. 14 of the Declaration of Rights of the Massachusetts Constitution, and G. L. c. 276, §§ 1-3A (1986 ed.). They argue that the motion judge erroneously applied the "totality-of-the-circumstances" test of *Illinois* v. *Gates*, 462 U.S. 213 (1983), in considering whether the affidavit of Trooper Nicolosi was sufficient to establish probable cause.

The motion judge issued her memorandum and order on September 20, 1984. This was after the Supreme Court in *Massachusetts* v. *Upton*, 466 U.S. 727 (1984), rev'g *Commonwealth* v. *Upton*, 390 Mass. 562 (1983), reaffirmed and clarified its holding in *Illinois* v. *Gates*, *supra*, that a flexible "totality-of-the-circumstances" approach to determining probable cause applies in the Fourth Amendment context. At that time, we had "had no appropriate occasion to consider what standard of probable cause is required by art. 14." *Commonwealth* v. *Upton*, 394 Mass. 363, 373 (1985) (*Upton II*). Subsequently, on April 1, 1985, we decided *Upton II*, in which we announced that, for purposes of art. 14 of our Declaration

judge observed that the only issue was whether the officers had indeed knocked and announced their presence. The judge concluded that the conduct of the occupants of the defendants' apartment demonstrated their awareness of the officers' presence before the officers entered the apartment.

of Rights, we determine probable cause according to "the principles developed under *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969)." *Id.* at 374. "Under the *Aguilar-Spinelli* standard, if an affidavit is based on information from an unknown informant, the magistrate must 'be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was 'credible' or his information 'reliable' (the veracity test). *Aguilar* v. *Texas*, *supra* at 114. If the informant's tip does not satisfy each aspect of the *Aguilar* test, other allegations in the affidavit that corroborate the information could support a finding of probable cause. *Spinelli* v. *United States*, *supra* at 415.' *Commonwealth* v. *Upton*, 390 Mass. at 566." *Id.* at 374-375. See *Commonwealth* v. *Valdez*, 402 Mass. 65, 70 (1988); *Commonwealth* v. *Reddington*, 395 Mass. 315, 322 (1985).

Accordingly, we consider whether Trooper Nicolosi's affidavit establishes probable cause for purposes of art. 14. In determining whether the unidentified informant's statement can be used to support a finding of probable cause, we treat each prong of the *Aguilar-Spinelli* test — the basis of knowledge and the veracity of the informant — separately, as an "independently important consideration." *Upton II*, *supra* at 375-376. *Commonwealth* v. *Reddington*, *supra* at 322.

The affidavit reports the informant's statement that he or she "on numerous occasions" observed heroin for sale in the second-floor apartment of 83 Franklin Street. Such personal observations satisfy the "basis of knowledge" prong of the *Aguilar-Spinelli* standard. *Commonwealth* v. *Valdez*, 402 Mass. 65, 70 (1988). *Commonwealth* v. *Borges*, 395 Mass. 788, 794-795 (1985).

The affidavit also satisfies the "veracity" prong of the *Aguilar-Spinelli* test. It is true that there is no indication that this informant had ever before provided information to the police. However, the informant's veracity is demonstrated on the face of the affidavit by independent police corroboration of detailed

information provided by the informant. Such independent corroboration may satisfy "either or both prongs of the *Aguilar-Spinelli* inquiry." *Commonwealth* v. *Santana*, 403 Mass. 167, 171 (1988). *Commonwealth* v. *Robinson*, 403 Mass. 163, 166 (1988). *Commonwealth* v. *Truax*, 397 Mass. 174, 177-178 (1986). The corroboration went far beyond such readily available information as the physical characteristics of the outside of the building at 83 Franklin Street and the appearance of the vehicle parked outside. In addition to that corroboration, the police twice observed the blue and white Oldsmobile which the informant had identified as a vehicle to transport heroin to dealers, and that the vehicle was being operated to and from the premises by an Hispanic individual as the informant had predicted. Furthermore, and most importantly, that individual was known by the police to be a heroin dealer and user. See *Commonwealth* v. *Hall*, 366 Mass. 790, 798 (1975) (police observation of suspected drug users and dealers entering and leaving the premises add to credibility of informant's statement that there was narcotics dealing on the second floor). The informant's reliability was also bolstered by his having identified, as customers of the occupants of the second-floor apartment, several individuals whom the police independently knew to be heroin dealers.

We conclude that the affidavit of Trooper Nicolosi contained enough evidence of illegal activity to establish probable cause under art. 14 to search the defendants' apartment. Therefore, the affidavit also satisfied G. L. c. 276, §§ 1-3A, and the less stringent Fourth Amendment "totality-of-the-circumstances" standard as well.

We turn to the defendants' second contention, which is that the warrant fails to specify the place to be searched with sufficient particularity to satisfy the Fourth Amendment, art. 14, and G. L. c. 276, § 2. The defendants do not argue that art. 14 or G. L. c. 276, § 2, provides more protection or requires more particularity than does the Fourth Amendment. We confine our discussion, then, to the Fourth Amendment. We inquire whether the warrant ran afoul of the Fourth Amendment warrant clause's prohibition of any warrant except one "particularly

describing the place to be searched and the persons or things to be seized." "The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland* v. *Garrison*, 480 U.S. 79, 84 (1987).

The warrant in this case authorized a search of "83 Franklin Street, 2nd floor . . . occupied by Jesus (L.N.U.)." The defendants contend that the warrant is fatally flawed because "83 Franklin Street, 2nd floor" actually includes two distinct apartments with distinct occupants. They argue that the warrant thus impermissibly left the police with discretion to search either apartment although probable cause existed to search only one of them.

In *Maryland* v. *Garrison*, *supra*, Baltimore police officers obtained and executed a warrant to search the person of Lawrence McWebb and "the premises known as 2036 Park Avenue third floor apartment." The Court concluded that, when the police applied for the warrant and when they executed it, they reasonably believed that there was only one apartment on the third floor at 2036 Park Avenue. In fact, however, the third floor was divided into two apartments, one occupied by McWebb and one by Garrison. Before the officers executing the warrant became aware that they were in Garrison's, and not McWebb's, apartment, they had discovered the contraband that subsequently provided the basis for convicting Garrison for violating Maryland's drug laws. The question in *Maryland* v. *Garrison*, *supra*, was whether the seizure of the contraband was prohibited by the Fourth Amendment.

The Supreme Court reasoned in *Maryland* v. *Garrison*, *supra* at 85-86, as follows: "Plainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude respondent's apartment from the scope of the requested warrant. But we must judge

the constitutionality of their conduct in light of the information available to them at the time they acted. Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued. Just as the discovery of contraband cannot validate a warrant invalid when issued, so is it equally clear that the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant. The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and disclose, to the issuing magistrate. On the basis of that information, we agree with the conclusion of all three Maryland courts that the warrant, insofar as it authorized a search that turned out to be ambiguous in scope, was valid when it issued." (Footnotes omitted.)

It is clear that, when Trooper Nicolosi applied for the warrant, she did not know that there were two apartments on the second floor at 83 Franklin Street. The defendants do not suggest otherwise. The question is, should she have known of the two apartments at that time? We answer that question in the negative. Nicolosi's affidavit states, and the judge found, that the information Nicolosi had received from the informant related to "the apartment" on the second floor. Nothing in the record suggests that, without going into the premises and investigating the second floor, the police should have suspected and could have discovered that there were two apartments on the second floor. See *Commonwealth* v. *Burt*, 393 Mass. 703, 717-718 (1985), in which we upheld the validity of a warrant that described the place to be searched as "a 3 story single family . . . building [at a given address]" despite the fact that the building at that address was actually a two-family residence. In that case, we held that the police, who had probable cause to search only the second-floor apartment occupied by the defendant, "did not know, or have reason to know, before the search that the building was not a one-family dwelling." *Id.* at 717. We conclude, as did the Appeals Court in *Commonwealth* v. *Demogenes*, 14 Mass. App. Ct. 577, 582 (1982), that the police in this case, proceeding on an informant's information with respect to "the" second-floor apartment, were not

required to risk disclosure of their surveillance, and thereby jeopardize their investigation, by going to the second floor at 83 Franklin Street before applying for the warrant. For the same reason, we conclude that the police were not required to interview the owner or other occupants of the building or to take other steps that might disclose their interest in the premises. We conclude, therefore, that the warrant was valid. Nothing in *Commonwealth* v. *Treadwell*, 402 Mass. 355 (1988), requires a different result. The Federal exception to the particularity requirement relied on in *Maryland* v. *Garrison*, *supra*, was not at issue in *Treadwell*. In *Treadwell*, the warrant specified two separate distinguishing factors to designate the apartment to be searched: that the apartment was "above No. 17," and that it had a sticker on its door reading "Make My Day." *Id.* at 357. Because no apartment had both characteristics and each of two apartments had one of them, this court held that the warrant gave discretion to the police to choose either apartment and thus was invalid. *Id.* at 361. Because the principles relied on in *Treadwell* and *Maryland* v. *Garrison* apply in different contexts, those two decisions do not conflict with one another. *Maryland* v. *Garrison*, not *Treadwell*, controls the present case.

There is no merit to the defendants' third and only other contention, that the judge erred in concluding that the police complied with the "knock and announce" rule. As we have pointed out in n. 2 above, the judge found that the police had made their presence known to the defendants before the police forced their way into the defendants' apartment. The defendants were entitled to nothing more.

*Judgments affirmed.*