' COMMONWEALTH *vs.* LEE GATES.

No. 90-P-1407.

Plymouth. June 13, 1991. - August 30, 1991.

Present: DREBEN, FINE, & PORADA, JJ.

*Controlled Substances. Constitutional Law*, Search and seizure, Probable
cause. *Search and Seizure*, Affidavit. *Probable Cause.*

The affidavit in support of a search warrant, based in part on information
from an unnamed informant, was sufficient to establish probable cause
under art. 14 of the Massachusetts Declaration of Rights, where the
informant's statements established the basis of her knowledge and
where her veracity was corroborated by independent police investigation
and surveillance of the premises to be searched. [332-334]

A criminal defendant who alleged that false statements had been made in
an affidavit in support of a search warrant was not entitled to an evi-
dentiary hearing where none of the allegedly false statements was nec-
essary to a finding of probable cause. [334-335]

INDICTMENT found and returned in the Superior Court De-
partment on May 4, 1987.

The case was heard by *George N. Hurd, Jr.*, J.

*Stephen Steinberg* for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the
Commonwealth.

DREBEN, J. In his appeal from his conviction of trafficking
in cocaine (convictions of possession of LSD and marihuana
were placed on file with the defendant's consent), the defend-
ant contests the denial of his motion to suppress evidence
(narcotics, drug paraphernalia, and money) seized from his
home and his person pursuant to a search warrant. He claims
that the affidavit in support of the search warrant failed to
establish probable cause for the search and also claims that
he was entitled to a *Franks* hearing (*Franks* v. *Delaware*,
438 U.S. 154 [1978]) because of misstatements contained in
the affidavit. While the question whether the affidavit in sup-

port of the warrant established probable cause under art. 14 of the Declaration of Rights of the Massachusetts Constitution is close, we conclude that the allegations were sufficient. We also conclude that the alleged misstatements did not entitle the defendant to an evidentiary hearing.

We state the facts as contained in the affidavit, dated March 12, 1987, which was prepared by Officer Bruce Malenfant of the Massachusetts State police. Included was information gathered by two other law enforcement officers who had spoken to a confidential informant, Mrs. Doe. Mrs. Doe had not previously given information to the police.

On or about February 12, 1987, Malenfant learned from Officer Markowicz of the East Bridgewater police department that Mrs. Doe had said that a Richard Harris of East Bridgewater was making weekly runs from East Bridgewater to Middleborough to pick up cocaine. Harris was using a gray Buick Skyhawk automobile and a yellow Ford pickup truck for these trips. Subsequent investigation showed that both of these cars were registered to members of Harris's family and at the same address in East Bridgewater. Mrs. Doe also informed Officer Markowicz that, in the past several weeks, she had been at the Middleborough residence of a man whose first name was Lee and that she had observed cocaine distributed from that residence.

Sergeant Bruce Gordon of the Plymouth County "CPAC Narcotic Unit" also spoke with Mrs. Doe. On February 12, she showed Gordon the residence where she, several weeks earlier, had seen cocaine being distributed. It was located at Two Thomas Street in Middleborough and was where, the police subsequently ascertained, the defendant Lee Gates lived with his wife. Mrs. Doe told Gordon that the operator of a black Fiero automobile was also "heavily involved" in the distribution of cocaine at the Thomas Street address. Gordon, while at Two Thomas Street on February 12, observed a black Fiero parked in the driveway.

Checks with the Registry of Motor Vehicles and other sources revealed that the black Fiero was registered to Harvey Flashman, that Flashman had been arrested for posses-

sion of Class B and Class D substances, and that Harris had been arrested for narcotics violations. Lee Gates had a long criminal record.

Police investigation and surveillance of Gates's residence revealed the following:

February 13, 1987: Malenfant saw Roger Parent leave the residence. Parent was known to Malenfant, as he had executed a search warrant two and a half years before at Parent's house. There, he had found marihuana plants, cocaine, assorted drug paraphernalia, and slips of paper on which the name "Lee" appeared next to notations which, in Malenfant's experience, were consistent with narcotics transactions. In the past three years, Malenfant had made "random checks" of Parent's address, and his observations indicated that Parent and Gates were well known to one another.

February 20, 1987: Malenfant saw the grey Buick Skyhawk, one of the cars used by Harris, in Gates's driveway.

February 23, 1987: Malenfant saw the black Fiero in Gates's driveway.

February 24, 1987: Malenfant saw the Fiero in the driveway and also saw Gates and Harvey Flashman leave — Flashman in the Fiero, and Gates in a van, later shown to be registered to Gates. Frequent telephone calls over the next eight days by Malenfant to Gates's number were not answered.

March 3 and March 4, 1987: Malenfant saw the black Fiero at Gates's residence.

March 4, 1987: Malenfant saw Harris's yellow pickup truck (one of the vehicles Mrs. Doe had said was used to transport cocaine) in Parent's driveway. Over a period of one hour and forty minutes, he saw three different cars park at Parent's residence and someone from each car go into the house. Each was there for five to ten minutes. Only one automobile registration number was obtained, and that belonged to a person who had been arrested in June, 1985, for assault and battery with a dangerous weapon. A man, whom

Malenfant later recognized as Richard E. Harris, Jr.,[1] left Parent's driveway in the yellow pickup truck. Malenfant followed the truck to Ski's Auto Body Shop in East Bridgewater. Twice, the truck pulled over to the side of the road to let other vehicles pass. Based on Malenfant's experience, this action is consistent with that of a driver seeking to avoid being followed.

March 10, 1987: Another Middleborough police officer (Storms) observed Gates's van, which had not been seen for nearly two weeks, parked in his yard. He also saw Parent's truck, with Parent driving, and Flashman's Fiero leaving Gates's residence. At Parent's residence, Storms saw a passenger from a small Chevette stop, go inside, and leave within three minutes. He thought the passenger was Flashman.

Telephone records between October, 1986 and January, 1987 show numerous calls were made from Ski's Auto Body Shop to Gates's home. Richard Harris is employed at Ski's Auto Body Shop, and his employer is Richard Koslowsky, a person convicted of possession of cocaine.

March 11, 1987: Malenfant saw Harris's Buick Skyhawk and Flashman's black Fiero at Gates's residence.

Within seventy-two hours of March 12, the date of the affidavit, Mrs. Doe and Officer Markowicz told Malenfant that Richard Harris offered to sell cocaine to Mrs. Doe and others.

On March 11, 1987: Storms received information, from a source wishing to remain anonymous, that from Thanksgiving of 1986 until the present, there was much traffic late at night going to and from Parent's house and some of the vehicles stopped only for short periods of time. Storms also provided Malenfant with a tape recording of an anonymous tip to the Middleborough police stating that Parent was dealing in cocaine.

---

[1]Although Malenfant at one point refers to Richard E. Harris, Jr., and at other times to Richard Harris, it appears that they are the same person. Richard Harris's birth date is given as 3/28/63. A twenty-four year old is unlikely to have a son who can drive.

For purposes of art. 14 of the Declaration of Rights of the Constitution of the Commonwealth, probable cause is determined under the principles set forth in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). *Commonwealth* v. *Upton*, 394 Mass. 363, 374 (1985). "[T]o establish probable cause, an affidavit based on information from an unnamed informant must provide the magistrate with facts showing some of the underlying circumstances leading to the informant's knowledge, as well as his reliability." *Commonwealth* v. *Reddington*, 395 Mass. 315, 322 (1985). If the informant's tip fails to satisfy the basis of knowledge or the veracity of the informant test, other "independent police corroboration can make up for deficiencies in either or both prongs of the *Aguilar-Spinelli* test," but "each element of the test must be separately considered and satisfied or supplemented in some way." *Commonwealth* v. *Upton*, 394 Mass. at 375-376.

The basis of knowledge test is satisfied by Mrs. Doe's statements that she saw cocaine being distributed at Gates's residence and that Harris had recently offered to sell her cocaine. Although Mrs. Doe's original observation, without more, might be viewed as a single out of date instance of illegal conduct which would not give rise to probable cause to believe that similar conduct is continuing, see *Commonwealth* v. *Reddington* 395 Mass. at 323, the supplementation of that evidence by the recent offer by Harris, coupled with the police corroboration of Harris's connection to the Gates residence, satisfies the "basis of knowledge" prong of the test. See *Commonwealth* v. *Carrasco*, 405 Mass. 316, 321 (1989).

The affidavit also satisfies the "veracity" prong. There is here no indication that Mrs. Doe had previously supplied the police with information. As in *Commonwealth* v. *Carrasco, supra* at 321-322, however, the affidavit shows independent police corroboration of detailed information provided by the informant, including her claim that she had seen cocaine distributed from Gates's house. The corroboration went beyond such readily available information as the location of Gates's

residence and that Harris was driving a Buick Skyhawk and a yellow Ford pickup truck. In addition to that corroboration, the police showed repeated connections between Gates or his residence and two persons (Harris and Flashman) who had been arrested for narcotics violations and a third person (Parent) in whose residence the police had, pursuant to a warrant, found drugs and notations linking drug transactions to Gates, or at least to ."Lee." One or the other of Harris's cars was seen at the Gates residence on February 20 and again on March 11. Numerous telephone calls from Harris's place of employment in East Bridgewater were made to the Gates residence.

Moreover, there was evidence that the group probably obtained drugs on March 3 and 4 and again on March 10 and 11. On March 3 and March 4, the black Fiero belonging to Flashman was seen at the Gates residence. On March 4, Harris was at the Parent residence at a time when narcotics transactions probably were taking place, and Harris drove from there to East Bridgewater in such a manner as to elude surveillance.

On March 10, Gates's van, Parent's truck, and Flashman's Fiero were at the Gates residence. Harris's vehicle.and the black Fiero were again at Gates's residence on March 11. At about this time Mrs. Doe and others were offered drugs by Harris.

Although much of the corroboration of Mrs. Doe's tips was based on Gates's association with known or suspected drug dealers, Parent, Harris, and Flashman, this was also true in *Commonwealth* v. *Carrasco*, 405 Mass. at 322, a case quite similar to the one at bar and which upheld a finding of probable cause. See also Smith, Criminal Practice & Procedure § 215 (2d ed. 1983 & Supp. 1991). Even more significant is the evidence that suggests that on March 3-4 and March 10-11 drugs were available to the group. This evidence, when coupled with the independent, albeit distant, linkage of Gates ("Lee") to Parent's narcotics transactions, sufficiently supplements the details given by Mrs. Doe to demonstrate her veracity. We do not consider the two other

anonymous tips obtained by Officer Storms as adding anything of substance. See *Commonwealth* v. *Reddington*, 395 Mass. at 324.

The defendant also claims error in the motion judge's denial of his motion to suppress without holding an evidentiary hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154 (1978). He contends that he made a substantial preliminary showing that Malenfant's affidavit contained false and misleading statements. Accompanying the defendant's motion was an affidavit of counsel setting forth the following alleged falsehoods:

1) Flashman's Fiero was registered at Eight Egypt Avenue, Scituate at the time Malenfant alleges that he made checks with the Registry. Malenfant's affidavit has the Fiero registered to Flashman at "P.O. Box 2485, Ocean Bluff [*sic*], MA."

2) Malenfant stated that "according to the Massachusetts Board of Probation," Harvey Flashman was arrested for possession of Class B and Class D drugs. Counsel's affidavit states that Malenfant, "I suggest, deliberately," omits that the charges were dismissed and the records sealed. Therefore, if Malenfant had, in fact, made a check, he would not have discovered any record of the arrests.

3) Counsel also disputes that Gates has a "long criminal record." Counsel asserts that Gates was convicted in 1963, 1964, and 1965 of unauthorized use of a motor vehicle, of operating after suspension, and of malicious injury to personal property. He also had four subsequent convictions for operating after suspension and a larceny conviction. He had no convictions after 1975.

4) Counsel alleges that while Malenfant stated that Koslowsky was convicted of possession of 264 grams of cocaine, he was convicted only of simple possession and given a one-year suspended sentence and two years' probation.

As our discussion upholding the affidavit indicates, none of the allegedly false statements was necessary to the finding of probable cause. For this reason, even if the falsity of the statements were established, and even if the statements could

be shown to have been made knowingly and intentionally or with reckless disregard of the truth (and not as the result of carelessness), as required by *Franks*, the defendant would not be entitled to a *Franks* hearing. *Commonwealth* v. *Amral*, 407 Mass. 511, 519 (1990).[2] *Commonwealth* v. *Dion*, *ante* 168, 173, 177 (1991).[3]

*Judgment affirmed.*

---

[2]He is also not entitled to an *Amral* hearing as the affidavit does not assert "facts which cast a reasonable doubt on the veracity of *material representations* made by the affiant *concerning a confidential informant*" (emphases supplied). *Id.* at 522. The alleged falsehoods did not concern Mrs. Doe.

[3]The defendant does not argue that he is entitled under the Massachusetts Declaration of Rights to a hearing even if the allegedly false statements were not necessary to establish probable cause. See *Commonwealth* v. *Dion, supra* at 170 n.3 (1991), and cases cited.