COMMONWEALTH *vs.* VA MENG JOE.

Suffolk. February 6, 1997. - June 3, 1997.

Present: WILKINS, C.J., LYNCH, O'CONNOR, FRIED, & MARSHALL, JJ.

*Arrest. Search and Seizure,* Threshold police inquiry, Probable cause. *Constitutional Law,* Search and seizure, Probable cause. *Probable Cause.*

In a criminal case, the record of the hearing on the defendant's motion to suppress evidence demonstrated that the police had reasonable suspicion to make an investigatory stop of the defendant, based on a known informant's tip, the details of which predicted the defendant's behavior and were corroborated by police officers' observations: events subsequent to the stop, coupled with the reasonable suspicion, provided the officers with probable cause to arrest and search the defendant. [102-107]

INDICTMENT found and returned in the Superior Court Department on December 11, 1992.

A pretrial motion to suppress evidence was heard by *Julian T. Houston,* J., and the case was heard by *Thomas E. Connolly,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Robert L. Sheketoff* for the defendant.

*Patricia M. Blackburn,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was indicted in December of 1992 for trafficking in heroin. G. L. c. 94C, § 32E (*c*) (1). Prior to trial, the defendant moved to suppress the drugs which were seized from his pocket at the time of his arrest. The motion was denied. The defendant waived a jury trial and was found guilty by a Superior Court judge. The defendant appealed. The Appeals Court affirmed the conviction, concluding that the stop of the defendant was a valid investigatory stop and that the subsequent search of the defendant was justified because the police officers were warranted in taking reasonable precautions for their own protec-

tion. *Commonwealth* v. *Va Meng Joe*, 40 Mass. App. Ct. 499, 508-509 (1996). We granted the defendant's application for further appellate review and affirm, but on grounds somewhat different from those relied on by the Appeals Court.

*Facts.* The judge found the following facts.[1] A confidential informant told Special Agent Randy Reeves of the United States Immigration and Naturalization Service that he had spoken to the defendant on the telephone and that he had ordered two ounces of heroin. The informant said that the heroin delivery would take place that day outside a doughnut shop on Morton Street in the Roxbury section of Boston between 3:30 and 4 P.M.,[2] and that the defendant would deliver the heroin alone in a black Mercedes-Benz automobile.[3] The informant had previously been arrested; this was the first time that the informant had provided any information to the police.

Special Agent Reeves then talked with Detective Thomas Morrissey and Detective Russell Grant of the Boston police department. The three then planned a stakeout near the doughnut shop. At approximately 4 P.M., the defendant appeared alone in a black Mercedes-Benz in front of the doughnut shop. He pulled in front of the doughnut shop and, although he slowed down, he did not come to a complete

---

[1]When he denied the defendant's motion to suppress, the judge made no written findings. After the defendant appealed, however, the Appeals Court ordered the findings of fact. The findings of fact and rulings of law were docketed in the Superior Court and then filed on November 9, 1995, in the Appeals Court.

[2]As the Appeals Court noted, "The transcript of the hearing does not include any testimony regarding the exact time of delivery. Since, however, a coordinated police response was quickly arranged and set up in the area of the doughnut shop by 3:00 P.M., and [the informant] showed up at the shop at the same time, it is a reasonable inference that [the informant] had in some fashion indicated to Reeves the approximate time of anticipated delivery that afternoon. See *Commonwealth* v. *Cast*, 407 Mass. 891, 896 (1990); *Commonwealth* v. *Fleming*, 37 Mass. App. Ct. 927, 928 (1994)." *Commonwealth* v. *Va Meng Joe*, 40 Mass. App. Ct. 499, 500 n.2 (1996). We note also that the defendant makes no argument that the judge's findings on this issue are erroneous.

[3]The informant further described the defendant as an Asian male, and indicated that he knew the defendant as "David."

stop, but instead proceeded down Morton Street.[4] Detective Morrissey and Detective Grant followed.[5] When the defendant stopped at a red light, Detective Grant ran in front of the defendant's automobile and displayed his badge. As Detective Grant approached, the defendant stepped out of his vehicle and put his right hand into his upper left pocket. Detective Morrissey, who had also left his vehicle, then drew his weapon, and the defendant removed his hand from his pocket. On searching the defendant the police officers found two large plastic bags containing a "tannish" colored powder; laboratory testing revealed that the substance was heroin.

*Discussion.* At the motion to suppress hearing, the Commonwealth conceded that the police officers, in searching the defendant, were not acting out of a concern for their safety.[6] The Commonwealth argued before the Appeals Court that the search of the defendant was justified by the presence of probable cause. The Appeals Court, however, concluded that the warrantless search was lawful because the search was "confined . . . to what [was] minimally necessary to learn whether . . . [the suspect was] armed" and valid under the

---

[4]Although not discussed by the judge, it appears from the evidentiary hearing on the motion to suppress that the informant had left the doughnut shop before the defendant's arrival and had walked across Morton Street to a service station where he used a public telephone. The informant's departure from the doughnut shop was not part of the police plan.

[5]It appears from the testimony that Special Agent Reeves also followed the defendant but that his vehicle became caught in traffic.

[6]THE JUDGE: "Let me ask a question to the government that occurs to me. [Defense counsel] said a moment ago that there was nothing in the record to indicate that the actions that the officer took, Officer Morrissey, took in removing the contraband from the inside of the defendant's jacket was based upon a concern for his safety. Is that right . . . ."

DEFENSE COUNSEL: "That's right Your Honor."

THE JUDGE: "Summarizing it correctly?"

DEFENSE COUNSEL: "There [is] nothing that I heard in this record this morning, Your Honor."

THE JUDGE: "Right. What is your response to that statement?"

ASSISTANT DISTRICT ATTORNEY: "Well, Your Honor, I think [defense counsel] is right. Detective Grant is the one that went into the pocket and he . . . did not testify today. Detective Morrissey testified to exactly what he saw, and his testimony was that Detective Grant did, in fact, go inside that pocket and didn't pat him down. So while I suppose potentially they could have been presented, it was not, and the Commonwealth is proceeding on a straight probable cause grounds."

principles enunciated by the Supreme Court in *Terry* v. *Ohio*, 392 U.S. 1 (1968). *Commonwealth* v. *Va Meng Joe, supra* at 511.

An appellate court is free to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings. Indeed, if the facts found by the judge. support an alternative legal theory, a reviewing court is free to rely on an alternative legal theory. See *Commonwealth* v. *Cast*, 407 Mass. 891, 897 (1990); *Commonwealth* v. *Signorine*, 404 Mass. 400, 403 n.1 (1989).[7] Here, however, the Commonwealth conceded that the police officer, in searching the defendant, was not motivated by a concern for his own safety. Therefore, the search cannot be justified as a valid warrantless search on that ground. We consider, therefore, whether the police officers had probable cause to search the defendant. See *Commonwealth* v. *Cast, supra* at 901; *Commonwealth* v. *Anderson*, 406 Mass. 343, 346 (1989).

*Probable cause.* In order to have had probable cause to arrest and search the defendant, the police officers would have to have known of enough facts and circumstances "to warrant a person of reasonable caution" in believing that the defendant had committed or was committing a crime. See *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982), and cases cited; *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 686-687 n.3 (1984).

"Where an unnamed informant's tip is relied on by law enforcement officers as supplying probable cause to arrest and search the defendant, art. 14 [of the Massachusetts Declaration of Rights] requires that the information pass muster under the two-pronged standard set forth in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969)." *Commonwealth* v. *Cast, supra* at 896. Generally,

---

[7] A police officer does not have to testify specifically that he was in fear of his own safety so long as it is clear that he was aware of specific facts which would warrant a reasonable person to believe he was in danger. *Commonwealth* v. *Fitzgibbons*, 23 Mass. App. Ct. 301, 306-307 n.5 (1986), citing *Commonwealth* v. *Ballou*, 350 Mass. 751, 756-757 (1966), cert. denied, 385 U.S. 1031 (1967). "[T]he officers' concern for their own safety is a fact that can be inferred from all the circumstances: it does not necessarily depend on direct testimony." *Commonwealth* v. *Fitzgibbons, supra* at 307. See *Commonwealth* v. *Willis*, 415 Mass. 814, 817 (1993); *Commonwealth* v. *Patti*, 31 Mass. App. Ct. 440, 443-444 (1991).

to satisfy the "Aguilar-Spinelli" test, the Commonwealth is required to demonstrate (1) some underlying circumstances which demonstrate a basis of the informant's knowledge (basis of knowledge test) and (2) some underlying circumstances from which the law officials could have concluded that the information was reliable (veracity test). *Id.* See *Commonwealth* v. *Robinson*, 403 Mass. 163, 164-165 (1988). Independent police corroboration of detailed information supplied by the informant can compensate for deficiencies in either or both prongs of the Aguilar-Spinelli test. See *Commonwealth* v. *Desper*, 419 Mass. 163, 166 (1994); *Commonwealth* v. *Cast, supra*; *Commonwealth* v. *Robinson, supra* at 166; *Commonwealth* v. *Upton*, 394 Mass. 363, 376 (1985).

The defendant concedes that the informant has a sufficient basis of knowledge, but argues that the veracity test has not been satisfied. The veracity test requires a showing of the underlying circumstances from which the police could conclude that the information provided by the informant was credible or reliable. We therefore consider whether the tip provided any indicia of reliability and whether independent police investigation sufficiently corroborated the tip such that the veracity prong of the test was satisfied. See *Commonwealth* v. *Cast, supra* at 900; *Commonwealth* v. *Carrasco*, 405 Mass. 316, 321-322 (1989) (where informant had never before provided information to police, informant's veracity was demonstrated by independent police corroboration of detailed information provided by informant).

The tip contained details of fairly specific information of the type not easily obtainable by a casual bystander such as the identity of the drug dealer, the vehicle he would be driving, his exact destination, and the approximate time when he would arrive. See *Commonwealth* v. *Bakoian*, 412 Mass. 295, 301-302 (1992) (detailed, corroborated tip stating "the exact identities of the persons occupying the vehicle, their exact destination, and the approximate time frame within which they would arrive at the destination location" helped establish informant's reliability); *Commonwealth* v. *Anderson*, 366 Mass. 394, 399-400 (1974) (tip itself had indicia of reliability where inference could be drawn that it was based on informant's personal observations and accurately predicted defendant's movements). In addition to the detailed information contained within the tip, the informant was reachable by

authorities; Special Agent Reeves had telephoned him and told him that everything was set. See *Commonwealth* v. *Bakoian, supra* at 301 (that police knew informant's identity gave tip indicia of reliability); *Commonwealth* v. *Cast, supra* at 898 (that informant gave agents his telephone number indicated that tip itself contained some indicia of reliability). Contrast *Commonwealth* v. *Melendez,* 407 Mass. 53, 58 n.4 (1990) (no indication that police knew informant's name or address or would have been able to reach him).[8]

These inherent indications of veracity were shored up by the police investigation that corroborated many of the details provided by the informant. See *Commonwealth* v. *Montanez,* 410 Mass. 290, 300 (1991); *Commonwealth* v. *Carrasco, supra* at 321-322. Indeed, as the motion judge noted, "events unfolded precisely as predicted by the informant." The defendant arrived alone at the doughnut shop on Morton Street on September 24, 1992. He was driving a black Mercedes-Benz, and he arrived at approximately 4 P.M. Moreover, the police officers corroborated the informant's prediction with respect to the defendant's future behavior by verifying the defendant's arrival, alone, at a particular location at a particular time. Corroboration of future behavior, which goes beyond "readily available information," has a special significance when determining the reliability of an informant. *Commonwealth* v. *Carrasco, supra* at 322. See *Commonwealth* v. *Bakoian, supra* at 302; *Commonwealth* v. *Cast,* 407 Mass. 891, 897-898 (1990); *Commonwealth* v. *Robinson, supra* at 166 n.2; *Commonwealth* v. *Anderson, supra* at 400. Contrast *Commonwealth* v. *Spence,* 403 Mass. 179, 181 (1988) (where anonymous informant described only defendant's race, not sufficient corroboration regarding reliability of informant's tip concerning defendant); *Commonwealth* v. *Borges,* 395 Mass. 788, 789, 795 (1985) (informant did not indicate to police any expected behavior on the defendant's part; insufficient corroboration regarding reliability of informant's tip concerning defendant).

---

[8]Moreover, as the Appeals Court noted, because the informant earlier specifically identified the defendant by pointing out his photograph, the absence of the sort of detailed description of the defendant's physical appearance in the tip, found significant in many cases of this nature, is irrelevant. *Commonwealth* v. *Va Meng Joe,* 40 Mass. App. Ct. 499, 505 n.9 (1996).

Finally, as the Appeals Court noted, "enhancing both the reliability of [the informant's] information and the corroborative effect of the police investigation in this case was [the defendant's] arguably suspicious conduct." *Commonwealth* v. *Va Meng Joe*, 40 Mass. App. Ct. 499, 507 (1996). Indeed, as the defendant approached the doughnut shop, where the informant had told Special Agent Reeves that the rendezvous was to take place, he slowed down and looked around as if he were meeting someone. He then drove off. While ordinarily it may be critical that the predicted delivery did not take place, when it is considered that the informant had left the doughnut shop where he was to meet the defendant and walked across the street, the force of the corroboration is not weakened. "[T]o the trained eye of [an] officer," the defendant's passing by the doughnut shop and slowing down as if he were looking for someone takes on special significance and may be relied on by an officer in making an assessment of the existence of probable cause. *Commonwealth* v. *Cast, supra* at 900, citing *Commonwealth* v. *Myers*, 16 Mass. App. Ct. 554, 557 (1983). See *Commonwealth* v. *Wren*, 391 Mass. 705, 707-708 (1984) (officer's observations of suspect's vehicle "traveling very slowly and then speeding up" an element supporting stop on reasonable suspicion); *Commonwealth* v. *Anderson, supra* at 400 (defendant's somewhat suspicious behavior considered in assessing whether police had reasonable suspicion for investigatory stop); *Commonwealth* v. *Rosario*, 37 Mass. App. Ct. 920, 922 (1994) (defendant, said by informant to be selling drugs, observed by police at location and time predicted to drive up and begin "obviously looking for someone [he] intended to meet" there; investigation amounted to verification of tip). Contrast *Commonwealth* v. *Lyons*, 409 Mass. 16, 21 (1990) (informant's reliability not enhanced where defendants displayed no suspicious behavior).

It is not necessary, however, for us to conclude that, at the time of the stop, the police officers had probable cause. There is no doubt that, at that point, the police had reasonable suspicion to make an investigatory stop. *Commonwealth* v. *Blake*, 23 Mass. App. Ct. 456, 459 (1987) ("[a] detailed tip, confirmed by the appearance of the car as predicted, at roughly the indicated place, moving in the 'right' direction, surely provided the reasonable and articulable suspicion that justified a threshold inquiry"). "An investigatory . . . stop

requires that the Commonwealth prove that the officer 'has a reasonable suspicion that the occupants have committed, are committing, or are about to commit a crime.' " *Commonwealth v. Lyons, supra* at 19, quoting *Commonwealth* v. *Wren, supra* at 707.

Since there is no doubt that the initial stop was justified, events subsequent to the lawful stop, coupled with the factors that supplied the police officers with ample reasonable suspicion to make the investigatory stop, provided the police officers with probable cause to arrest and search the defendant.[9] See *Commonwealth* v. *Alvarado*, 420 Mass. 542, 550 (1995) (although probable cause had not arisen at time of initial stop and investigation, events subsequent to stop provided sufficient probable cause to arrest defendant). The defendant stepped out of his automobile while stopped in traffic at a red light when approached by the police officers and furtively reached into his pocket, removing his hand from his pocket only after Detective Morrissey drew his gun. This behavior and furtive gesture is an additional factor that allows us to conclude that, at the time of the search, the police officers had probable cause to believe that the defendant had committed, or was committing, a crime. See *id.* at 551 ("nervous" behavior of suspect considered in determining whether police had probable cause to arrest); *Commonwealth* v. *Dion*, 31 Mass. App. Ct. 168, 174 (1991) (defendant's attempt to hide automobile key while he was being booked on drug charges established link between automobile and contraband); *Commonwealth* v. *Concepcion*, 10 Mass. App. Ct. 613, 616 n.2 (1980) ("A lunge or other furtive gesture is usually insufficient, by itself, to render a search reasonable. . . . Such a movement, however, is relevant in determining whether there is probable cause").

---

[9]We note that it is irrelevant that, at the motion to suppress hearing, the Commonwealth stated that "probable cause has to be complete before [the detectives] move in on the defendant's car." This, in contrast to the factual concession discussed previously, is a legal conclusion that we are not obligated to accept. Indeed, the defendant concedes in his application for further appellate review that the Commonwealth's concession of a legal point during the motion to suppress hearing can legitimately be ignored on appeal.

Because there was probable cause to arrest, the search was a valid search incident to arrest. G. L. c. 276, § 1. *Commonwealth* v. *Alvarado, supra* at 551. The motion to suppress was properly denied.[10]

*Judgment affirmed.*

---

[10]Because we decide the case as we do, we need not consider whether the Appeals Court was correct in concluding that the police acted reasonably in searching the defendant's pocket without first performing a pat down of the defendant's outer pocket and that an "external patting limitation . . . was not mandated by [*Terry* v. *Ohio*, 392 U.S. 1, 29-30 (1968)] as the invariably necessary first step in every protective search." *Commonwealth* v. *Va Meng Joe*, 40 Mass. App. Ct. 499, 511 n.14 (1996).