NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1302

COMMONWEALTH

vs.

KEWARD K., a juvenile.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury-waived trial, the juvenile was adjudicated delinquent on charges of carrying a firearm without a license, in violation of G. L. c. 269, § 10 (a), and unlawful possession of a loaded firearm, in violation of G. L. c. 269, § 10 (n).[1]  On appeal, he argues that the judge erred in denying his motion to suppress the firearm, which was recovered during what the juvenile claims was an unlawful patfrisk.  We agree with the juvenile that the facts known to the officers involved did not establish a reasonable suspicion that he was armed and dangerous

---

[1] The juvenile initially was charged as a youthful offender, but those charges were dismissed at the conclusion of the trial because the Commonwealth failed to present evidence of the juvenile's age.

and, consequently, the motion to suppress should have been allowed.[2]  We therefore reverse the order denying the motion to suppress, vacate the adjudications of delinquency, and set aside the findings.

Background.  We recount the facts as found by the motion judge, who was also the trial judge, following an evidentiary hearing at which State Trooper Ryan Walczak was the sole witness.[3]  The judge also viewed video footage from the body-worn cameras of Trooper Walczak and Trooper DaSilva (the record does not reveal a first name), both of whom were in Brockton on August 4, 2022, assisting Plymouth County juvenile probation officer Bonnie Vonasek in conducting "a warrant sweep of juveniles with active warrants."

---

[2] The juvenile also argues that the Commonwealth's evidence was insufficient to prove that he knew the firearm was loaded. "It appears doubtful that the Commonwealth has enough evidence to reprosecute the [juvenile], but we will leave the final decision on that matter to the district attorney." Commonwealth v. Darosa, 94 Mass. App. Ct. 635, 637 n.5 (2019), quoting Commonwealth v. Torres, 424 Mass. 153, 164 (1997).  Although perhaps not dispositive, based on our review of the video footage of the body cameras, we agree that evidence of the juvenile's reaction to Walczak's handling of the gun and his statement that he was concerned the gun would discharge was sufficient to meet the Commonwealth's burden on the element of knowledge under Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

[3] In this case we have supplemented our summary of the facts with uncontroverted and undisputed testimony from the hearing that the judge implicitly credited.  See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).

At approximately 9:40 A.M., Walczak, DaSilva and Vonasek were conducting surveillance of a residence located at 124 Laureston Street because Vonasek believed that a juvenile with an active warrant was staying at that address.[4]  The residence was known to Walczak as "a target of prior gun violence."  The troopers and Vonasek were in a cruiser parked about 200 yards away when two people drove by on a moped and turned into the driveway of the residence.[5]  Neither person was wearing a helmet (a motor vehicle infraction), and both were wearing sweatsuits, hoodies, and masks despite it being an extremely hot day.  As the moped passed by, the back passenger, later identified as the juvenile, looked back at the cruiser several times.  The troopers approached the moped and effectuated a stop.  Walczak asked the juvenile if he had any weapons on him.  The juvenile did not respond and looked away without making eye contact.  Then, "[s]imultaneously and immediately before trooper Walczak reached for the [juvenile's] hand, the [juvenile] turned his back on the trooper."  As Walczak reached for the juvenile's

---

[4] The judge's findings state that the time was 9:40 P.M.  It was clear, however, from the testimony and exhibits that the reference to "P.M." is a typographical error.

[5] It is not clear whether the cruiser was unmarked.  Walczak described it as a "state police issued cruiser" and in her closing remarks the prosecutor referred to the car as "an unmarked cruiser."

3

hand, Vonasek identified the juvenile by name and stated that he was supposed to be on home confinement. Walczak asked the juvenile again if he had any weapons, to which there was no answer, and then placed the juvenile in handcuffs. Walczak proceeded to pat frisk the area of the juvenile's waist and discovered a loaded firearm in the juvenile's waistband.

Based on these findings, the judge concluded that the stop and patfrisk were justified. The judge correctly ruled that the stop was proper as the juvenile had committed a motor vehicle violation by riding a moped without a helmet. Relying on Commonwealth v. Narcisse, 457 Mass. 1, 9 (2010), the judge further concluded that Walczak had "a reasonable apprehension of danger that the [juvenile] was armed." The judge noted that "officers are allowed to take reasonable precautions for their own, and other people's safety when there is a reasonable fear a suspect may be armed." In denying the motion to suppress, the judge determined that the following facts supported the officers' reasonable fear: (1) the location of the stop, which according to Walczak, had been "subject to previous gun-violence;" (2) the juvenile did not respond to Walczak's question whether he had a weapon; (3) the juvenile did not make eye contact with Walczak and, in a subtle motion, turned away from the trooper; (4) the juvenile was dressed inappropriately

4

for the weather; (5) there were two people stopped, the juvenile and the driver, and only two police officers, who also were charged with protecting Vonasek; and (6) Walczak knew the juvenile was supposed to be on home confinement.

Discussion.  "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law" (quotations and citation omitted).  Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).

1.  Facts.  The juvenile argues that two of the judge's factual findings on which she based her legal conclusion are clearly erroneous.  First, he argues there is no support for the finding that he turned his body away from Walczak.  Second, he claims that Vonasek did not announce that he was on home confinement until after the patfrisk had begun.  Thus, according to the juvenile, neither fact can be relied on to establish a reasonable suspicion that he was armed and dangerous.  While we agree that the sequence of events as depicted on the video footage is not entirely clear, we need not resolve the juvenile's argument that these findings are clearly erroneous, because even if we assume without deciding that the judge did

not err, we conclude that the facts as found do not establish a reasonable suspicion that the juvenile was armed and dangerous.

2. <u>Application of the law</u>. In her thoughtful decision and order, the motion judge correctly determined that the juvenile was lawfully stopped for a motor vehicle infraction. See <u>Commonwealth</u> v. <u>Santana</u>, 420 Mass. 205, 207 (1995) ("[w]here the police have observed a traffic violation, they are warranted in stopping a vehicle" [citation omitted]). Thus, the legal question becomes whether Walczak had a "reasonable suspicion that the [juvenile was] armed and dangerous." <u>Commonwealth</u> v. <u>Torres-Pagan</u>, 484 Mass. 34, 36 (2020).[6] The judge acknowledged

---

[6] The Commonwealth's primary argument on appeal is not the one it made below. It contends, for the first time, that the troopers had probable cause to arrest the juvenile for violating the conditions of his home confinement and therefore the patfrisk was justified as a search incident to an arrest. Apart from the fact the juvenile was not arrested for violating the conditions of his home confinement, the Commonwealth waived this argument. See <u>Commonwealth</u> v. <u>Alexis</u>, 481 Mass. 91, 101 (2018). See also <u>Commonwealth</u> v. <u>Bettencourt</u>, 447 Mass. 631, 634 (2006) ("Our system is premised on appellate review of that which was presented and argued below"). We reject as untenable the Commonwealth's assertion that the record is sufficient for us to affirm the order denying the motion to suppress on the theory that the troopers had probable cause. <u>Commonwealth</u> v. <u>Vick</u>, 90 Mass. App. Ct. 622 (2016), on which the Commonwealth relied at oral argument, and <u>Commonwealth</u> v. <u>Va Meng Joe</u>, 425 Mass. 99 (1997), cited in the Commonwealth's brief, are not to the contrary. In both of those cases the record provided a sufficient basis to support the claim raised by the Commonwealth for the first time on appeal. Here, by contrast, the record is devoid of any information regarding the terms or conditions of the juvenile's home confinement. As a result, it is unclear whether the juvenile was actually subject to arrest despite the

6

that the question whether the facts known to Walczak justified

the patfrisk is a close one, and we too view the question as

close.  That said, as noted above, we conclude the facts, as

found by the judge, while significant, do not justify the

patfrisk.

In Torres-Pagan, 484 Mass. at 39, the Supreme Judicial

Court explained that "the only legitimate reason for an officer

to subject a suspect to a patfrisk is to determine whether he or

she has concealed weapons on his or her person.  We therefore do

not allow such an intrusion absent reasonable suspicion that the

suspect is dangerous and has a weapon" (citation omitted).  That

said, as the judge observed, automobile stops may pose safety

concerns to the officers and the public.  See Commonwealth v.

Brown, 75 Mass. App. Ct. 528, 531 (2009) ("That an automobile

stop may pose a danger to the officer involved is a fact beyond

contention").  However, general safety concerns without more

will not justify a patfrisk.  See Torres-Pagan, supra.  Our

cases require specific articulable facts supporting an officer's

reasonable suspicion that a person is armed and dangerous (such

that the safety of the public and officers are at risk).  Brown,

Commonwealth's assertion that the juvenile had committed an
arrestable offense.

7

<u>supra</u> at 531-532.  Here, the Commonwealth's evidence falls short of establishing such a basis.

To begin with, we attribute little to no significance to the location of the stop.  Walczak testified that 124 Laureston Street had, at some point, been the "target of gunshot violence," and that another street, which runs perpendicular to Laureston, "was also a high crime area with past instances of violent crime."  The fact that there was no evidence of any connection between the juvenile and the address in question, let alone any connection between the juvenile and any reported violence at that residence, renders what was already a vague observation even less compelling.[7]  Next, like the judge, we place little weight on the fact that the juvenile did not answer Walczak's question whether he had a weapon.  As the judge correctly noted, the juvenile was not required to respond.  Additionally, although the juvenile looked away from Walczak and did not make eye contact with him, Walczack did not testify, and

---

[7] We note that Walczak candidly responded to questions posed by defense counsel and the judge that he had only "generalized knowledge" of gun violence in the area and that he learned of such violence at some unspecified point after he joined the Statewide gang unit in December 2018, approximately three and one-half years earlier.

8

the judge did not find, that the juvenile was nervous.[8] Contrast, e.g., Commonwealth v. DePeiza, 449 Mass. 367, 369 (2007) (nervousness properly considered, in combination with other factors, where defendant was "looking from left to right and shifting his weight from side to side, actions which, in the officers' experience, were signs that the defendant was nervous and likely to run"). Nor can the act of turning away in a subtle manner be considered a furtive gesture and, as such, it adds little to the analysis. See Torres-Pagan, 484 Mass. at 40 (defendant's exit of motor vehicle in full view of approaching officers, while unexpected, "can hardly be considered 'furtive'"). Contrast Commonwealth v. Sweeting-Bailey, 488 Mass. 741, 749 n.8 (2021) (furtive behavior where passenger took "a bladed stance," appeared to be preparing "to attack [one officer]," and had "a closed, clenched fist"); Commonwealth v. Resende, 474 Mass. 455, 459 (2016) (reasonable suspicion defendant was illegally carrying gun where he kept his right hand in his pocket and held it close to his body at waistband area, turned his body away from officer, and made multiple "retention checks").

---

[8] Walczak testified that the juvenile's hands were sweaty, and while he did not suggest the juvenile was nervous and noted it was a hot day, he described the sweaty hands as "uncommon."

9

Furthermore, the juvenile's apparent violation of his conditions of home confinement does not mean that he was armed and dangerous.  To be sure, that fact did provide a basis for inquiry, but none was made here.[9]  In the absence of any evidence that the juvenile had a prior history of violence or possession of a weapon, the mere fact that, as the judge found, he was "violating a court order," was not sufficient to establish reasonable suspicion that he was armed and dangerous at that moment.  Our conclusion in this regard is buttressed by the fact that the troopers were conducting a "warrant sweep" and were not investigating a report of a crime, let alone a crime involving a weapon.[10]  Contrast Commonwealth v. Karen K., 491 Mass. 165, 180-181 (2023) (patfrisk of juvenile justified in part based on report of "multiple kids hanging around, displaying a firearm").

The remaining significant factor concerns the juvenile's attire.  While we agree that the juvenile was overdressed and that his clothing was inconsistent with the hot weather, we cannot conclude that wearing a sweatsuit, hoodie, and mask while riding a moped, combined only with the observations discussed

---

[9] Indeed, as we noted in footnote 6, supra, this fact may have provided Walczak with probable cause to arrest, but the record was not sufficiently developed for us to determine if that is so.

[10] We note that there is no evidence that the juvenile was a target of or included in any way in the "warrant sweep."

above, reasonably supports a suspicion that the juvenile was concealing a weapon.[11]  As previously noted, the absence of any furtive movements or gestures is significant and distinguishes this case from others in which the Supreme Judicial Court has found that a patfrisk was justified.  See Karen K., 491 Mass. at 177 (one factor giving rise to reasonable suspicion that juvenile was concealing firearm was her repeated gestures in area of her waistband); Commonwealth v. Goewey, 452 Mass. 399, 407 (2008) (patfrisk justified where during routine traffic stop defendant appeared to "hide or retrieve something"); Commonwealth v. Stampley, 437 Mass. 323, 327 (2002) (reasonable to suspect defendant was retrieving weapon when he twice pulled arms inside vehicle and appeared to be reaching down to floor or seat of car).

Here, Walczak said "no" when asked if he had seen "either the operator of the moped or the person on the back seat [the juvenile] make any movements with their hands to their waist

---

[11] We note that in response to a question posed by defense counsel, Walczak acknowledged that the juvenile's clothing could have been worn to protect him from injuries.  Defense counsel asked:  "would you agree that . . . if somebody is riding a moped or motorcycle, . . . despite the weather, they may wear clothes that would protect them if they fell?"; to which Walczak replied:  "I don't disagree with that, no, I think that's fair."

area?"  In short, the facts and circumstances present here did not justify the patfrisk.

<u>Order denying motion to
  suppress reversed</u>.

<u>Adjudications of delinquency
  vacated; findings set
  aside</u>.

By the Court (Vuono, Singh &
  Hershfang, JJ.[12]),

Paul Little

Clerk

Entered:  March 12, 2025.

---

[12] The panelists are listed in order of seniority.