THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PORTER LUCKETT, Defendant-Appellant.

First District (5th Division)    No. 1—94—0502

Opinion filed June 30, 1995.

Dennis A. Giovannini and Herbert L. Goldberg, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Barbara L. Jones, and Kendra A. Thramann, Assistant State's Attorneys, of counsel), for the People.

JUSTICE T. O'BRIEN delivered the opinion of the court:

A grand jury indicted defendant, Porter Luckett, for possession of a controlled substance with the intent to deliver after police discovered a large amount of cocaine and other drug paraphernalia at defendant's apartment. At his subsequent trial, a jury found defendant guilty as charged, and the circuit court sentenced him to 17 years in prison. The court further fined defendant $160,000. We affirm.

## BACKGROUND

The following facts were taken from both the hearing on defendant's motion to quash the search warrant and suppress evidence and the ensuing trial. Chicago police officer Regina Brown testified that on November 26, 1990, she met with a confidential informant who told her drugs were being sold from the first-floor apartment at 3604 West Monroe Street in Bellwood, Illinois. The informant had been in the apartment earlier that day and had been allowed to sample some of the cocaine that was being sold. Several people had been present in the apartment, including a man who was armed with a 9 millimeter handgun. The informant named defendant as one of the people in the apartment.

Around 10 o'clock that night, Brown and her partner went to 3604 West Monroe and inspected the building from their car. They saw a front and a rear door and concluded that the building contained an apartment on the first floor and one on the second floor. Brown admitted seeing a side door, but could not see it "that well" due to the darkness.

On the following morning, Brown called both Commonwealth Edison and the Northern Illinois Gas Company and was told that the utilities of the first-floor apartment were billed to Irene and Porter McKinney.[1] Based on these facts, Brown obtained a search warrant for "Porter G. Luckett, aka: Porter aka: Porter McKinney" and the

---

[1]Porter McKinney is one of defendant's aliases.

premises at "3604 W. Monroe St., *1st Floor Apartment.*" (Emphasis added.)

On the evening of November 27, 1990, Brown and seven of her fellow officers met to plan their strategy for executing the search warrant. Officers from both the Chicago police department and the Bellwood police department participated in the search. When Brown arrived at the premises, she entered the building through the front door. At that time, she believed there was only one apartment on the first floor. Once in that apartment, Brown noticed that it was vacant. She then heard someone say, "We are in the apartment." She walked to the back of the apartment, through its rear door which exited into a foyer. She then proceeded through another door. That door was open when Brown first saw it. Brown realized the floor contained more than one apartment as she walked from the front apartment into the foyer and then into the rear apartment.

Chicago police officer Carlo Virgilio also took part in the search of 3604 West Monroe. Virgilio and his partner entered the first floor of the building through its side door, into a "small foyer." In that foyer, Virgilio saw two doors facing each other and realized that two separate apartments were on the first floor. Virgilio forcibly entered through the door on his left into a vacant apartment. As he entered, he saw Brown enter the same apartment from its front entrance. Virgilio returned to the foyer, and he and his partner entered the rear apartment, the door of which Virgilio's partner had kicked open. Virgilio and his partner were the first of the team to enter the rear apartment. After the entry, police found cocaine, drug-selling paraphernalia, and a handgun in the rear apartment.

At the hearing on the motion to suppress, the circuit court judge asked Brown several questions concerning a discrepancy between her testimony and the search warrant. During her testimony, Brown stated that she had spoken with the informant on November 26, 1990, and not on November 27, 1990, as the warrant indicated. Brown told the court that the date on the warrant was incorrect and that her testimony reflected the actual date on which the events had occurred.

The circuit court denied defendant's motion to quash the warrant and suppress the evidence. Specifically, the court ruled the officers had acted reasonably once they realized two apartments were on the first floor, emphasizing that (1) the contraband could have been moved while police obtained a more specific warrant for the search of the rear apartment, and that (2) weapons were purportedly in the apartment. The contraband found by police provided the basis for defendant's conviction.

## I

Defendant contends the circuit court erred in denying his motion to quash the search warrant and to suppress the evidence. He alleges the original warrant and its accompanying complaint bear signs of alteration. Defendant's characterization of the document's appearance is accurate: in each instance in which the premises to be searched is described, white correction fluid has been applied to mark out the original words. The word "Floor" is typed on the dried correction fluid, which covers the originally typed words "1st" and "Apartment." A rather large space exists between the typed-over word "Floor" and the original word "Apartment." However, the words "flr. (rear)" can be discerned under the correction fluid in that space.

■ Defendant suggests that the discernible words establish that Officer Brown knew prior to the search that two apartments were on the first floor. He maintains Brown lied about this fact at the suppression hearing. In response, the State contends defendant has waived this particular theory because he did not raise it in the circuit court.

Although we agree with defendant's characterization of the document's appearance, we can only speculate as to why the alterations were made. The alterations could have been done to correct a typographical error or they could have been done to legitimize the search; each is plausible. The record before this court contains no facts upon which we may pass judgment as to this issue. In fact, during oral argument, defense counsel informed this court that the matter was once again before the circuit court in the form of a postconviction petition. We note that the circuit court's determination on that petition is now on appeal. We, therefore, leave the matter to be decided in that forum.

Turning to the merits of defendant's contention, we begin our analysis by noting that a circuit court's ruling on a motion to suppress will not be overturned unless manifestly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 535 N.E.2d 837.) The circuit court's determinations regarding witness credibility, weight accorded to testimony, and the inferences to be drawn from that testimony are given deference upon review. (*People v. Galvin*, 127 Ill. 2d at 163.) If the evidence merely conflicts, a court of review may not substitute its judgment for that of the circuit court. *People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733.

Defendant mounts a two-pronged challenge to the particularity of the warrant in this case. He first maintains the warrant was facially vague because it described the premises merely as "3604 West Monroe Street, *1st Floor Apartment*" (emphasis added), when,

in actuality, the building at that address contained two first-floor apartments.

The fourth amendment requires that no warrant shall issue except those "particularly describing the place to be searched." (U.S. Const., amend. IV.) The purpose of this limitation is twofold. Primarily, it is to minimize the risk that those executing the warrant will mistakenly search a place other than the place authorized by the magistrate. Also, the lack of a more specific description may indicate that probable cause is wanting, that is, officials have made an insufficient showing to the magistrate either as to the identity of the items sought or of the premises where the items are located.

Generally, the fourth amendment's particularity requirement is not met where only a general description of a multiple-occupancy building is provided. (See, *e.g.*, *United States v. Busk* (3d Cir. 1982), 693 F.2d 28; *United States v. Higgins* (7th Cir. 1970), 428 F.2d 232.) That is so because the probable cause requirement would be rendered virtually meaningless if police could legally search several living units upon a mere showing that one of the units, not specifically identified, contained the contraband sought. *United States v. Higgins*, 428 F.2d at 235.

Defendant argues that *Maryland v. Garrison* (1987), 480 U.S. 79, 94 L. Ed. 2d 72, 107 S. Ct. 1013, provides the guidelines for determining the propriety of both the warrant and the search in this case. In *Maryland v. Garrison*, Baltimore police obtained a warrant to search the person of Lawrence McWebb and "the premises known as 2036 Park Avenue, third floor apartment." (*Maryland v. Garrison*, 480 U.S. at 80, 94 L. Ed. 2d at 78, 107 S. Ct. at 1014.) When the police applied for the warrant, they believed that there was only one apartment on the premises described in the warrant. In fact, the third floor was divided into two apartments, one occupied by McWebb and one by Garrison—an individual and a premises not originally the subject of the intended search. While executing the warrant, the police fortuitously encountered McWebb in front of the building and used his key to gain entrance to the first floor as well as to a locked door to the third floor. As the police entered the vestibule on the third floor, they encountered Garrison standing in the hallway. Both third-floor apartment doors were open. Only after entering Garrison's apartment and finding contraband did the police realize that the third floor contained two distinct apartments. Upon realizing the dual nature of the third floor, police discontinued their search of Garrison's apartment. Up to that point, the police had reasonably believed they were searching McWebb's apartment. *Maryland v. Garrison*, 480 U.S. at 81, 94 L. Ed. 2d at 79, 107 S. Ct. at 1015.

In *Maryland v. Garrison*, as in this case, the premises which were the object of the search turned out to be a dual apartment area—not the single apartment as described in the warrant. Like defendant here, Garrison challenged the search's propriety. In addressing the contention, the Supreme Court conducted a two-part inquiry, addressing (a) the validity of the warrant's issuance and (b) the validity of the warrant's execution. *Maryland v. Garrison*, 480 U.S. at 84, 86, 94 L. Ed. 2d at 80, 82, 107 S. Ct. at 1016, 1017.

Speaking to the validity of the warrant's issuance, the Court noted that, generally, facts discovered after a warrant has been issued cannot retroactively invalidate the warrant. (*Maryland v. Garrison*, 480 U.S. at 85, 94 L. Ed. 2d at 81, 107 S. Ct. at 1017.) After reviewing the police's prewarrant investigation, the Court held that the warrant had been validly issued, stressing that the objective facts available to the police prior to obtaining the warrant indicated that only McWebb's apartment was on the third floor.

The record in the present case compels a similar result. Here, the testimony indicated that upon a nighttime drive-by inspection, the officers seeking the warrant observed the building at 3604 West Monroe to be what is commonly referred to as a "two flat," with one apartment on each floor. Although a side door existed, it could not be seen that well from the street or alley due to the darkness. Moreover, Officer Brown stated that prior to securing the warrant, she had telephoned the local utility companies and learned that the first-floor apartment was billed to Irene and Porter McKinney.[2] Based upon the above investigation, police obtained a warrant for the above address "first floor apartment." Thus, the record supports and the trial court so held that neither Officer Brown nor the other officers had reason to believe the first floor at 3604 West Monroe contained more than one apartment. As stated in *Maryland v. Garrison*:

> "Plainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the [described] floor ***, they would have been obligated to exclude [defendant's] apartment from the scope of the requested warrant. *** The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing magistrate." (*Maryland v. Garrison*, 480 U.S. at 85, 94 L. Ed. 2d at 81, 107 S. Ct. at 1017.)

Thus, we hold, as the Court in *Maryland v. Garrison* did, that the warrant here did not lack particularity at the time that it was issued.

---

[2]Porter McKinney was one of defendant's aliases.

We must next address the officers' execution of the search once the error was discovered. (*Maryland v. Garrison*, 480 U.S. at 86, 94 L. Ed. 2d at 82, 107 S. Ct. at 1017.) Indeed, it is this issue which constitutes defendant's second challenge to the warrant's particularity: whether the officers acted reasonably *after* they realized the original description of the premises was erroneous. However, what distinguishes *Maryland v. Garrison* from this case is the fact that the apartment which yielded the contraband in that case was not the premises originally intended to be the subject of the police search. Here, the apartment which was supposed to have been searched ultimately was searched. In *Maryland v. Garrison*, the Court upheld the search of the unintended premises based upon the fact that the police believed that "McWebb's apartment and the third-floor premises [were] one and the same; therefore their execution of the warrant reasonably included the entire third floor." *Maryland v. Garrison*, 480 U.S. at 88, 94 L. Ed. 2d at 83, 107 S. Ct. at 1018.

We realize that *Maryland v. Garrison* fails to address the precise issue raised here, that is, the validity of a search of the intended apartment immediately after the mistaken entry of an adjoining apartment. Although *Maryland v. Garrison* is not directly on point in this regard, we agree with defendant that it controls to the extent that it holds that the reasonableness of the officers' conduct is the touchstone of the analysis. (*Maryland v. Garrison*, 480 U.S. at 87, 94 L. Ed. 2d at 82, 107 S. Ct. at 1018, quoting *Hill v. California* (1971), 401 U.S. 797, 28 L. Ed. 2d 484, 91 S. Ct. 1106.) Both the State and the defendant rely on *People v. Bass* (1991), 220 Ill. App. 3d 230, 580 N.E.2d 1274, in support of their respective positions; however, *People v. Bass* provides little help to the resolution of this issue.

In that case, police obtained a search warrant to search the first-floor apartment at 2712 W. Evergreen in Chicago. During the suppression hearing, the executing officer admitted that, once at the address, he had noticed that there was a rear and a front apartment on the first floor. The officer searched the rear apartment where defendant Bass was found and arrested. Relying on *Maryland v. Garrison*, the appellate court noted that the search of the rear apartment was constitutionally improper. (*People v. Bass*, 220 Ill. App. 3d at 241.) The court, however, held that defendant lacked standing to question the validity of the search and upheld her conviction. Thus, the court's statement regarding the constitutional infirmity of the search would seem to be mere *dictum*.

Neither the State nor defendant has cited any other case which squarely addresses the issue raised here. However, the second circuit's analysis in *United States v. Santore* (2d Cir. 1960), 290 F.2d

51, *cert. denied* (1961), 365 U.S. 834, 5 L. Ed. 2d 744, 81 S. Ct. 749, is instructive. There, police obtained a warrant authorizing a search of the "premises known as 164 Hill St., Long Island *** being a single family home." In executing the warrant, agents went to the side door of the house and showed defendant the warrant when he came to the door. The agents proceeded up the stairs to the attic where contraband was found. At trial, defendant claimed that because the house was a two-family residence, the warrant failed to describe the place to be searched with particularity. However, the evidence revealed that defendant had illegally converted the single-family dwelling into a two-family dwelling. Moreover, the warrant's description was in accord with the outward appearance of the building. The agents did not learn of the mistake in the description until they entered the premises. "At that moment it was too late for them, consistent with the success of their mission to have retreated and obtained a new warrant." *United States v. Santore*, 290 F.2d at 67.

Interestingly, the United States Supreme Court echoed the same sentiments some 27 years later in *Maryland v. Garrison*:

> "While the purposes justifying a police search strictly limit the permissible extent of the search, the Court has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." (*Maryland v. Garrison*, 480 U.S. at 87, 94 L. Ed. 2d at 82, 107 S. Ct. at 1018.)

The Court further noted that " '[b]ecause many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part.' " (*Maryland v. Garrison*, 480 U.S. at 87 n.11, 94 L. Ed. 2d at 82 n.11, 107 S. Ct. at 1018 n.11, quoting *Brinegar v. United States* (1949), 338 U.S. 160, 176, 93 L. Ed. 1879, 1891, 69 S. Ct. 1302, 1311.) Thus, we consider the rationale utilized to uphold the search in *Santore* similar in respects to that set forth in *Maryland v. Garrison*.

We realize the reasoning of *Santore* could be questioned when measured against the strict requirements of the fourth amendment. If a warrant's description is so deficient that upon execution the officer cannot determine which *building* was intended, should not the same result obtain when officers cannot determine which part of a multiple occupancy dwelling was intended? This precise question was considered by Professor Wayne LaFave in his learned treatise "Search and Seizure." He tenders three points in response:

> "First of all, in the latter situation the police can in no way be faulted for their failure to have a more specific description, for reasonable investigation would not have uncovered the multiple-

occupancy character of the structure. Secondly, as emphasized in the last sentence quoted in *Santore*, the latter situation is unique in that the defect in the warrant description is discovered only after the police have tipped their hand by commencing execution of the warrant. Finally, there is ordinarily no risk to those in separate living units, for upon discovery of the multiple-occupancy character of the premises the police should be expected to draw upon all readily available information (whether or not in the warrant or affidavit) in deciding what part of the described premises may reasonably be searched. It is fair to conclude, therefore, that the *Santore* rule is sound, provided it is narrowly construed so as to apply only when: (i) the multiple-occupancy character of the building was not known and could not have been discovered by reasonable investigation; (ii) the discovery of the multiple occupancy occurred only after the police had proceeded so far that withdrawal would jeopardize the search; and (iii) upon discovery of the multiple occupancy, reasonable efforts were made to determine which subunit is most likely connected with the criminality under investigation and to confine the search accordingly." (2 W. LaFave, Search & Seizure § 4.5, at 80 (1978).)

The three points raised above correspond to the concerns regarding the issuance of a warrant and the reasonableness of the executing officer's conduct enunciated by the Court in *Maryland v. Garrison*. Because of this fact, the analysis can be applied to the facts in the present case. After reviewing the record, it is our opinion that all three of the factors identified by LaFave were met here.

 ■ Initially, we agree with the circuit court that the officers in this case could not have known nor could have reasonably discovered that two apartments existed on the first floor. Moreover, by the time police discovered this fact, "it was too late *** consistent with the success of their mission, to have retreated and obtained a new warrant." (*United States v. Santore*, 290 F.2d at 67.) The actions of the officers entering through the front door doubtless alerted occupants to the presence of authority. The nature of the contraband sought was not so large or immobile that it could not be moved while police were attempting to secure another warrant. Indeed, even the posting of an officer outside the house to guard against this sort of behavior would have been futile given that the drugs could have been more thoroughly hidden within the apartment or perhaps, more realistically, destroyed. Finally, the officers' actions upon discovery of the multiple occupancy nature of the building satisfied the "reasonable efforts" test previously referred to by Professor LaFave. Once the officers realized they were in the wrong apartment, they immediately directed their search to the only other apartment on the first floor,

thus precluding any possibility of a fishing expedition. Under the circumstances testified to in this case, we hold that the officers made reasonable efforts to determine which apartment was most likely "connected with the criminality under investigation and *** confine[d] the search accordingly." 2 W. LaFave, Search & Seizure § 4.5, at 80 (1978).

Our conclusion is strengthened also by the result reached by the supreme court of Massachusetts in *Commonwealth v. Carrasco* (1989), 405 Mass. 316, 540 N.E.2d 173. There, police obtained a warrant to search the second floor of an identified address. Police did not realize that two apartments existed on the floor. Upon executing the warrant, police knocked on both apartment doors and eventually found contraband which later served as the basis for Carrasco's conviction. The court upheld the search, noting that it was consistent with the concerns set forth in *Maryland v. Garrison. Commonwealth v. Carrasco*, 405 Mass. at 324-25, 540 N.E.2d at 178-79.

Accordingly, the circuit court did not err in denying defendant's motions to quash the search warrant and to suppress evidence.

## II

Defendant next maintains that his conviction cannot stand because the State failed to prove that he had control over the apartment. In support of this argument, he notes that bills and other documents not in his name were found at the apartment.

To achieve a successful prosecution for possession of a controlled substance, the State must establish that the accused had knowledge of the presence of narcotics and the narcotics were in the accused's immediate and exclusive control. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361.) Actual possession need not be demonstrated, however, if constructive possession can be inferred from the facts. (*People v. Stamps* (1982), 108 Ill. App. 3d 280, 438 N.E.2d 1282.) Where drugs are found on premises rather than on a defendant's person, the State must prove that the defendant had control of the premises in order to permit the inference that defendant had knowledge and control over the narcotics. (*People v. Nettles*, 23 Ill. 2d 306.) Knowledge and possession are questions of fact to be resolved by the trier of fact, whose findings should not be disturbed upon review unless the evidence is so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of guilt. *People v. Valentin* (1985), 135 Ill. App. 3d 22, 480 N.E.2d 1351.

The State met its burden in this case. The building's landlord identified defendant as the man who rented the apartment. Proof of

defendant's rental of the premises in which narcotics are found is evidence that defendant had control over the premises. (*People v. Mack* (1957), 12 Ill. 2d 151, 160, 145 N.E.2d 609.) In addition, the landlord testified that he knew defendant by the name Porter Minniefield, one of the names found on a bill which was introduced into evidence. Furthermore, several parking tickets, all in defendant's name, were found in the apartment. Police also recovered from the apartment a Cook County inmate identification card, bearing defendant's name as well as his photograph. In addition, police discovered a check made out to defendant from the Cook County Department of Corrections trust fund. Officers also confiscated personal notes bearing the name "Lucky" (defendant's nickname) as well as photographs. Given this evidence, the jury could reasonably conclude that defendant maintained control over the premises and the narcotics. We decline to disturb that finding.

### III

Defendant contends the circuit court erroneously refused two defense instructions regarding impeachment by prior inconsistent statements and by omissions. He points out several areas of the officers' testimony which were inconsistent with the facts put into the warrant's accompanying affidavit and with the officers' written police reports.

Generally, in reviewing the adequacy of instructions, a court of review must consider all of the instructions as a unit to ascertain whether they fully and fairly cover the law. (*People v. St. Pierre* (1975), 25 Ill. App. 3d 644, 324 N.E.2d 226.) All of the given instructions in this case were pattern instructions, in accordance with Supreme Court Rule 451. (134 Ill. 2d R. 451.) That rule mandates the use of pattern instructions in criminal cases, unless the instruction does not accurately state the applicable law.

In this case, defendant proffered the following nonpattern instruction:

> "If a witness fails to mention a fact under circumstances at that time that makes it reasonably probable that he would have mentioned them if true, that omission may be considered as an inconsistency."

The circuit court refused the instruction, noting that it would confuse the jury. The court also indicated that Illinois Pattern Jury Instructions, Criminal, No. 3.11 (3d ed. 1992) (hereinafter IPI Criminal 3d) adequately set forth the law in this area. The court determined that

the jury would be advised that the omissions constituted impeachment under the first paragraph of IPI Criminal 3d No. 3.11.[3]

The court then reversed itself as to whether IPI Criminal 3d No. 3.11 should be given. The court concluded that "an omission in the police report as far as what's in the closet, the surveillance of the car, or who recovered what is the type of—is not a prior inconsistent statement. You have impeached the officer by their failure to put it in the report and the State has rehabilitated them by saying the report is a summary. So, therefore, unless you can point to me some prior inconsistent statement, I'm going to reverse my ruling about that instruction and it's not going in."

■ An instruction regarding the credibility of a witness' testimony in the light of inconsistencies is a cautionary one. (*People v. McClellan* (1978), 62 Ill. App. 3d 590, 595, 378 N.E.2d 1221.) As a result, the circuit court has considerable discretion in deciding whether to give such an instruction, particularly where the inconsistency is doubtful. (*People v. McClellan*, 62 Ill. App. 3d at 595.) In this case, the refusal to instruct the jury as to this point did not leave the jury without adequate guidance. As this court has noted, "It is obvious to the layman that any contradiction of a witness' testimony calls into question the accuracy of that testimony, and if that testimony is disbelieved as to one matter, the veracity of the remainder is cast in doubt." (*People v. McClellan*, 62 Ill. App. 3d at 596.) The jury here heard the contradictions in the officers' testimony. Furthermore, the court instructed the jury that, in considering the testimony of any witness, "to take into account his ability to and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have and *the reasonableness of his testimony considered in the light of all of the evidence in the case.*" (Emphasis added.) For this reason, the court did not err in refusing defendant's proffered instructions.

### IV

Defendant maintains he is entitled to a new trial because the State engaged in misconduct during its closing argument. He specifically points to the prosecutor's statement that he was happy to tell the jury that the State had sustained its burden of proof. The prosecutor also indicated that defendant enjoyed the same subpoena power as the State.

---

[3]IPI Criminal 3d No. 3.11 states, "The believability of a witness may be challenged by evidence that on some former occasion he [(made a statement) (acted in a manner)] that was not consistent with his testimony in this case. Evidence of this kind [ordinarily] may be considered by you only for the limited purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom."

Generally, a prosecutor is allowed a great deal of latitude in making the closing argument, and the circuit court's determination of the propriety of the argument will not be disturbed absent a clear abuse of discretion. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970.) Improper remarks are the basis of reversal only when they result in substantial prejudice to the defendant. (*People v. Piscotti* (1985), 136 Ill. App. 3d 420, 483 N.E.2d 363.) Furthermore, a defendant may not assert such prejudice if the comments of which he complains were provoked or invited by his own counsel's arguments. *People v. Piscotti*, 136 Ill. App. 3d 420.

As to the State's comment regarding the burden of proof, the circuit court sustained the objection and admonished the jury to disregard it. Moreover, the jury was instructed that closing argument was not evidence and was not to be considered as such. (See *People v. Stiff* (1989), 185 Ill. App. 3d 751, 542 N.E.2d 392.) In addition, the court instructed the jury as to the State's burden and that guilt was to be decided on the basis of whether the jury found that the State sustained its burden. In view of these instructions and admonishment, the circuit court cured any error associated with the remark.

As to the prosecutor's remark regarding subpoena power, defendant argues that the comment unfairly underscored his failure to testify. This inference is not readily apparent given the context of the remark. The prosecutor, at the time, was attempting to rebut the defense counsel's suggestions that no one testified as to defendant's control of the apartment, such as neighbors or Irene Minnifield. The prosecutor responded that the State's witnesses as to defendant's control of the apartment were uncontradicted. In this regard, the comment was not directed at defendant, but rather, at the other witnesses to whom defense counsel referred. Nevertheless, once again, the circuit court here sustained the objection and admonished the jury. In addition, the court instructed the jury that it was not to consider defendant's right not to testify as evidence against him. For these reasons, defendant's arguments concerning prosecutorial misconduct fail to persuade.

Accordingly, defendant's conviction is affirmed.

Affirmed.

COUSINS, P.J., and GORDON, J., concur.