THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES J. BRADLEY, Defendant-Appellant.

Fourth District   No. 4—99—1048

Opinion filed June 14, 2001.

978

Daniel D. Yuhas and Michael H. Vonnahmen, both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Perry L. Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a stipulated bench trial in the circuit court of Champaign County, the trial court found defendant Jonathan James Bradley,

a/k/a James Jonathan Bradley, guilty of unlawful cannabis trafficking (720 ILCS 550/5.1(a) (West 1998)) and sentenced him to eight years' imprisonment. The only issue on appeal is whether the evidence seized from defendant's apartment should have been suppressed because the search warrant violated the particularity requirement of the fourth amendment to the United States Constitution (U.S. Const., amend. IV). We affirm.

▟ Following a suppression hearing, the trial court denied defendant's motion to suppress and supplemental motion to suppress the evidence seized pursuant to a search warrant issued for the premises at 48 East Bellefontaine Street, Champaign, Champaign County, Illinois. A trial court's ruling on a motion to suppress will not be overturned unless manifestly erroneous. *People v. Galvin*, 127 Ill. 2d 153, 162, 535 N.E.2d 837, 841 (1989). The basis for the charges began when the police intercepted a package from California and opened it. The package appeared to contain cannabis. The inspectors put a tracking device in the package, which would indicate when it was opened, and had an inspector deliver the package to the address listed on the package. The inspectors observed a man take the package from the undercover inspector, posing as a mail carrier, and followed the man with the package to a residence on the corner of Walnut and Bellefontaine. The man that the agents followed was Alvin Ross. The agents monitored the audible tone that indicated the package had been opened and prepared a complaint for search warrant. The initial search warrant authorized the search of the white-with-blue-trim, two-story residence located at the northwest corner of the intersection at Bellefontaine and Walnut Streets. The warrant's description of the property was in accord with the outward appearance of the residence. In this case, the first warrant for this building did not lack particularity when it was issued. A suspect had been followed to that residence. A 30-minute surveillance of the residence from one block away was made to formulate an operation plan. The officer maintaining the surveillance testified that there was nothing to lead him to believe that this was anything other than a single-family dwelling and he was unable to get closer because there were persons in the yard of the residence.

The first search warrant did not indicate a street address for the building to be searched. The evidence at the suppression hearing established that the house had two addresses on it and so did the detached garage. The downstairs apartment was 1401 North Walnut Street, and the upstairs apartment was designated 48 Bellefontaine Street. Officer Jim Rein, who had conducted the surveillance, testified that, upon the police approaching the building to conduct a search and

before going inside, there were individuals running from the area that had to be restrained. He did not realize until entering the building that the internal passageway to the upstairs had been blocked. There was an exterior stairway to the second story. Detective Robb Morris testified that the officers were discovering the layout of the house as they walked through it. Morris discovered the outside stairs. He testified that the door at the top of the stairway was partially open. He and Rein, with two other officers, proceeded upstairs. According to Morris, nothing alerted him that this was a separate residence from the first floor. Defendant testified that he rented the upstairs apartment and did not give the officers permission to enter it. Defendant testified that less than five minutes passed between the time the officers entered the downstairs apartment and proceeded to the upstairs apartment. Officer Rein testified that he did not realize it was a separate apartment until he went back downstairs. Then he noticed there was a mailbox on the railing and "48" written on one of the posts. Detective Morris testified that as he proceeded through the upstairs he thought it might be a separate apartment because of the rooms, "perhaps a kitchen." The officers swept the upstairs to see if anyone was hiding there. Officer Robert Rea, who was assigned to stay at the foot of the stairs to ensure that no one entered the upstairs portion of the building after the other officers had descended the outside stairs, testified that he never saw the address 48 Bellefontaine anywhere on the house. We note that defendant's motion to suppress, paragraph 3, alleges "That only during the execution of the search warrant at 1401 N. Walnut and the subsequent search of 48 East Bellefontaine did the police officers learn that the residence was actually divided into two separate residences with the upstairs portion having the address of 48 East Bellefontaine."

The complaint for search warrant stated that, when the officers arrived to begin searching the building, defendant was found in the yard outside the building burning a package containing cannabis that had been traced to that location through the efforts of postal inspectors and federal and local law enforcement officers. Defendant was burning the package at the bottom of the stairs leading to the second story of the building. The first search warrant authorized officers to seize anyone on the premises involved in illegal delivery or possession of cannabis. The stipulation at trial indicated that Rein apprehended defendant in the garage as he attempted to flee the police. Based on the fleeing of suspects at the time this search began, the officers could reasonably expect that an individual may be hiding upstairs. In the sweep, one of the officers discovered a plastic box with Baggies containing what appeared to be cannabis in a closet. The officer merely closed

the door of the closet and left the apartment. Upon realizing that this was a separate residence, another search warrant specifically addressed to this apartment was obtained.

■ It is the function of the trial court to assess the credibility of the witnesses, assign weight to their testimony, and draw inferences from the evidence. *Galvin*, 127 Ill. 2d at 163, 535 N.E.2d at 841. The trial court's determination that the first warrant was validly issued was not manifestly erroneous. Moreover, the defendant has failed to demonstrate that the police knowingly or intentionally used false statements to obtain the first search warrant. See *People v. Economy*, 259 Ill. App. 3d 504, 509, 631 N.E.2d 827, 831 (1994).

■ When a warrant describes the area to be searched as a two-story, single-family residence, a reasonable reading of the warrant indicates that it encompasses the entire building at the location described. See *Economy*, 259 Ill. App. 3d at 512, 631 N.E.2d at 833. However, whether a particular search is reasonable depends not only on the facts giving rise to the search, but on the nature of the search as well. *Economy*, 259 Ill. App. 3d at 512, 631 N.E.2d at 832. Therefore, as in *People v. Luckett*, 273 Ill. App. 3d 1023, 1030-33, 652 N.E.2d 1342, 1347-49 (1995), the trial court further considered the execution of the search by the police after the error was discovered.

> "While the purposes justifying a police search strictly limit the permissible extent of the search, the Court has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Maryland v. Garrison*, 480 U.S. 79, 87, 94 L. Ed. 2d 72, 82, 107 S. Ct. 1013, 1018 (1987).

Defendant's attack focuses not on the warrant for this particular apartment, but on the earlier issued warrant for the entire building, the police execution of that earlier warrant, and their failure to realize that the building contained two apartments until after they had entered the upstairs apartment and one officer observed what appeared to be cannabis in a closet. Defendant does not challenge the probable cause to issue either warrant, only that the police in effect searched the upstairs apartment before obtaining a search warrant specifically directed to that apartment.

■ The fourth amendment prohibits unreasonable searches, protects against giving the police overbroad discretion in conducting searches, and is preserved by closely scrutinizing careless police practices. *People v. Siegwarth*, 285 Ill. App. 3d 739, 742, 674 N.E.2d 508, 510 (1996). A search is unreasonable if the warrant leaves to police the discretion of which apartment to search in a multiple-family building with separate living quarters. See *Siegwarth*, 285 Ill. App. 3d at

743, 674 N.E.2d at 511. Facts discovered after the warrant is issued, however, do not invalidate the warrant. *Luckett*, 273 Ill. App. 3d at 1029, 652 N.E.2d at 1346.

■ With regard to the sweep of the premises for suspects, the officers found out too late that there were two separate residences to retreat from the search to obtain a new warrant without jeopardizing their mission, particularly in light of the weapons discovered in the lower portion of the building. See *United States v. Santore*, 290 F.2d 51, 66-67 (2d Cir. 1960). Thereafter, the officers acted reasonably to obtain a search warrant. The trial court's denial of the motions to suppress was not manifestly erroneous.

The judgment of the circuit court of Champaign County is affirmed.

Affirmed.

STEIGMANN, P.J., and MYERSCOUGH, J., concur.