2021 IL App (1st) 181738-U

No. 1-18-1738

Order filed August 13, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | No. 16 CR 11243 |
| | ) | |
| | ) | Honorable |
| ANTHONY DOUGLAS, | ) | Joan M. O'Brien and |
| | ) | Michael J. Kane, |
| Defendant-Appellant. | ) | Judges, presiding. |

JUSTICE SHARON ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mary Mikva and Justice Maureen Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm that Defendant was not denied due process where some of the officer's testimony before the grand jury was not true but the remaining evidence was sufficient to support the indictment; and that there was sufficient evidence at trial of defendant's constructive possession of a loaded firearm. Defendant's sentence for possession of a firearm with defaced identification marks is vacated pursuant to the one-act, one-crime rule.

¶ 2    Following a bench trial, defendant Anthony Douglas was found guilty of two counts of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2016)) based on possession of a firearm and ammunition, and one count of possession of a firearm with defaced identification marks (720 ILCS 5/24-5(b) (West 2016)). He was sentenced to concurrent prison terms of four years for each count of UUWF and two years for possession of a firearm with defaced identification marks.

¶ 3    On appeal, defendant contends that he was denied due process when the State used false testimony that he confessed to secure an indictment from the grand jury. He further contends that his physical proximity to a loaded firearm in a vehicle and "ambiguous" statements were insufficient to prove him guilty beyond a reasonable doubt. Alternatively, defendant argues that his conviction for possession of a firearm with defaced identification marks must be vacated pursuant to the one-act, one-crime rule. We affirm in part and vacate in part.

¶ 4    Prior to trial, defendant filed motions to quash arrest and suppress evidence and to dismiss the indictment based upon a "material misrepresentation" at the grand jury proceedings. Relevant here, defendant alleged that although Chicago police officer Duszak testified before the grand jury that defendant admitted possessing a firearm and stated " 'there was a lot going in the area,' " dashcam video revealed that defendant did not confess.[1] The motion argued that because the alleged confession was the only evidence linking defendant to the firearm, the indictment should be dismissed. Attached were a Chicago Police Department (CPD) arrest report for defendant, a transcript of the July 20, 2016 grand jury proceedings, and a dashcam video.

---

[1] The transcript of proceedings does not include Duszak's first name.

¶ 5    The arrest report states that defendant said "on his own free will" that " 'She has nothing to do with that. There[']s alot [*sic*] going on around here and it is what it is.' " The grand jury transcript reflects that Duszak testified that after curbing a speeding vehicle driven by defendant, he learned that defendant had a warrant and arrested him. During an inventory search, a firearm loaded with 12 rounds was recovered from the glovebox. The State then asked whether defendant stated "that the handgun was his, and that there was a lot going on in the area?" Duszak replied, "Yes." Additionally, the State informed the grand jury that defendant was previously convicted of attempt armed robbery in case number 05 CR 2171601

¶ 6    The matter proceeded to a hearing on both motions.[2] Defendant testified that he was driving a Porsche Panamera accompanied by his cousin Yvonne Smith on the afternoon of July 6, 2016, when officers curbed him. Defendant did not own the Porsche. Defendant provided an officer with a valid driver's license and proof of insurance. Before complying with instructions to exit, defendant gave the keys to Smith. He was arrested, searched, and placed in a squad car. Defendant did not tell officers that a firearm was in the glovebox or that he owned or possessed the firearm, and officers did not ask his permission to search the vehicle. Defendant viewed the video of his arrest and acknowledged that it was true and accurate.

¶ 7    During cross-examination, defendant described the vehicle's "key" as an object inserted into the ignition. That day was the first time he drove the vehicle, and he did not know about a detachable fob. He was surprised that the police recovered a firearm, did not know where it was found, and had never seen it before.

¶ 8    The defense stipulated that the dashcam video was fair and accurate, and published it.

---

[2] The Honorable Joan M. O'Brien presided over this hearing.

¶ 9      In the video, Duszak and Officer Brandon McDonald approach a vehicle. Duszak speaks to defendant, obtains identification, and returns to the squad car. The officers approach the vehicle again and Duszak gestures at defendant, who exits and is searched and handcuffed. McDonald has Smith exit the vehicle; she removes defendant's jewelry and is handcuffed.

¶ 10     McDonald searches the vehicle and recovers a black object. Defendant then states, "Hey man, y'all can just let her go, man.  For real man, she ain't got nothing to do with shit, bro."  He repeats, "Y'all can just let her go. She ain't got nothing to do." The officers and defendant then discuss inventorying his property. There is further indistinct conversation, and defendant says, "Hey man. *** Don't even say nothing, man." A few minutes later, defendant says, "Hey man, stop talking to them, man. Why you steady talking *** Shut the f*** up. Damn."

¶ 11     The State then presented Duszak, who testified that on the afternoon of July 4, 2016, he and McDonald curbed a speeding vehicle driven by defendant. Duszak requested defendant's driver's license and insurance, and after running his identification, learned he had a warrant for child support. Duszak then instructed defendant to exit the vehicle. After hesitating, defendant complied and was arrested.

¶ 12     Pursuant to CPD policy, the vehicle had to be towed, so McDonald conducted an inventory search to ensure nothing valuable was left inside. In the center console, he located the key portion of the key fob, which unlocked the trunk and glovebox. A loaded firearm was recovered from the locked glovebox.

¶ 13     The defense argued, in relevant part, that although Duszak testified before the grand jury that defendant said the firearm was his, the video established that the phrase "It is what it is" was

not a confession. The State replied that Duszak interpreted defendant's answer as an admission of possession, and there was no intention to mislead the grand jury.

¶ 14    The court denied the motions to quash arrest and suppress evidence and to dismiss the indictment. Regarding the latter motion, the court concluded that the prosecutor asked Duszak a leading question—namely, "Did [defendant] state that the handgun was his, comma, and that there was a lot going on in the area?"—but did not suborn perjury. The court stated that dismissing an indictment was an "extreme step" only taken when a defendant demonstrates substantial injustice, which, based on the facts and the video, did not occur.

¶ 15    The matter proceeded to a bench trial where Duszak's testimony was largely consistent with his prior testimony.[3] According to Duszak, while McDonald searched the vehicle, defendant stated, " 'She has nothing to do with that. There is a lot going *** on around here. It is what it is.' " This statement was not captured on the audio recording. After McDonald removed a firearm from the vehicle, defendant stated, " 'She doesn't have shit to do with anything.' " The firearm was a Smith & Wesson .40-caliber with a defaced serial number containing 11 rounds in the magazine and 1 round in the chamber. The State published the dashcam video.

¶ 16    During cross-examination, Duszak testified that defendant did not own the vehicle. Upon questioning by the court, Duszak testified that the vehicle had a keyless system, the fob was on the driver's seat, and the key that matched the fob was in the center console.

¶ 17    McDonald testified that during the inventory search of the vehicle, he observed the key fob in the center console, and the detachable key in the cup holder. He then unlocked the glovebox, which contained a black semiautomatic firearm with the serial number scratched off. The weapon

---

[3] The Honorable Michael J. Kane presided over defendant's trial.

and its 12 rounds were inventoried. Upon questioning by the court, McDonald testified that he needed the key to access the glovebox.

¶ 18    The State entered stipulations that a fingerprint expert would testify that no ridge impressions were recovered from the firearm, and that defendant was convicted of attempt armed robbery in case number 05 CR 2171601.

¶ 19    In finding defendant guilty, the trial court noted that during the initial search of the vehicle, defendant stated, " 'she has nothing to do with that, there's a lot going on around here, it is what it is,' " and after the firearm was recovered, defendant added that " 'she doesn't have shit to do with anything.' " Defendant drove the vehicle and the key to the glovebox was separated from the fob, which "indicat[ed]" that the firearm was recently placed in the glovebox. Additionally, after the firearm was recovered and Smith was arrested, defendant again stated she had nothing to " 'do with that,' " which the court interpreted as "taking the heat off" Smith. As the firearm and ammunition were the only contraband and defendant had no other reason to "defend" Smith, the court believed that defendant's statements concerned the firearm.

¶ 20    Defendant filed a posttrial motion alleging, in pertinent part, that the court erred in denying the motion to dismiss the indictment and he was not proven guilty beyond a reasonable doubt.

¶ 21    In denying the motion, the court noted that defendant's statements suggested an attempt to "clear" Smith of something he knew was "wrong" in the vehicle. After the firearm was recovered, defendant made another statement to clear Smith, which indicated knowledge of the firearm, "because there is nothing else to talk about under these circumstances." The court further noted that defendant yelled at Smith to stop talking to the police, suggesting his belief that she could incriminate them.

¶ 22    The court sentenced defendant to concurrent prison terms of four years for each count of UUWF and two years for possession of a firearm with defaced identification marks. Defendant did not file a motion to reconsider sentence.

¶ 23    On appeal, defendant first contends that he was denied due process when the State secured an indictment by presenting false testimony that he admitted possession of the firearm.

¶ 24    The grand jury's role is to determine whether probable cause exists that a person has committed a crime which would warrant a trial. *People v. Legore*, 2013 IL App (2d) 111038, ¶ 23. The State advises the grand jury of the proposed charges and the applicable law. *Id.* Generally, a defendant may not challenge the validity of an indictment returned by a legally-constituted grand jury. *People v Wright*, 2017 IL 119561, ¶ 61. However, the trial court has the inherent authority to dismiss an indictment where a prejudicial denial of due process occurred. *People v. Oliver*, 368 Ill App. 3d 690, 694-95 (2006).

¶ 25    A defendant's due process rights may be violated when the State deliberately or intentionally misleads the grand jury, uses known perjured or false testimony, or presents deceptive or inaccurate evidence. *Id.* at 694; see also *Legore*, 2013 IL App (2d) 111038, ¶ 23 (prejudicial denial of due process can occur where an indictment is procured through prosecutorial misconduct). The misconduct, however, must constitute a deprivation of due process or a miscarriage of justice. *Wright*, 2017 IL 119561, ¶ 61. To warrant dismissal of the indictment, the denial of due process must be unequivocally clear, and the prejudice must be actual and substantial. *Oliver*, 368 Ill. App. 3d at 694-95. Prosecutorial misconduct resulting in a due process violation is prejudicial only where the grand jury would not otherwise have indicted the defendant. *Legore*, 2013 IL App (2d) 111038, ¶ 23.

¶ 26    A defendant must therefore establish that the contested testimony was so deceptive or inaccurate that it affected the grand jury's deliberations. *People v. Holmes*, 397 Ill. App. 3d 737, 742 (2010); see also *People v. Fassler*, 153 Ill. 2d 49, 58 (1992) (the trial court has authority to dismiss an indictment procured by the State's misconduct only when the defendant can show that the misconduct resulted in actual and substantial prejudice). The burden of proving prejudice is on the defendant. *People v. Torres*, 245 Ill. App. 3d 297, 300 (1993). "The mere possibility of injustice is not enough." *Id.*

¶ 27    We generally review the trial court's ultimate ruling on a motion to dismiss charges for an abuse of discretion, but when the issue presented is a purely legal one, the standard of review is *de novo*. *People v. Stapinski*, 2015 IL 118278, ¶ 35. "Whether a defendant was denied due process, and whether that denial was sufficiently prejudicial to require the dismissal of the charges, are questions of law, which are reviewed *de novo*." *Id.* Once the trial court finds that a defendant "suffered a prejudicial violation of his due process rights," the court's choice of remedy is reviewed for an abuse of discretion. *Id*. As defendant challenges the trial court's determination that he was not denied due process, our review is *de novo*. *Id.*

¶ 28    The transcript reflects that during the grand jury proceedings, Duszak affirmatively answered the State's inquiry, "Did [defendant] state that the handgun was his, and that there was a lot going on in the area?" The State contends that this testimony "accurately presented" the facts in a "truncated, summary fashion." Defendant, however, asserts the video shows that he did not claim the firearm. He concludes that absent Duszak's answer to this question, the remaining evidence presented to the grand jury did not establish probable cause.

¶ 29    However, contrary to defendant's position on appeal, the complained-of testimony did not cause "actual and substantial" prejudice (see *Oliver*, 368 Ill. App. 3d at 694-95), when the remaining evidence supported the indictment. "[A] due process violation consisting of prosecutorial misconduct before a grand jury is actually and substantially prejudicial only if without it the grand jury would not have indicted the defendant." *Id.* at 696-97. In other words, a defendant is prejudiced only when the evidence was so weak that the misconduct induced the grand jury to indict. *Id.* at 697. Here, the remaining evidence supported the indictment when Duszak also testified that a firearm was recovered from the vehicle defendant was driving, defendant stated that "there was a lot going on in the area," and he had a previous conviction for attempt armed robbery. See *id.* Given that evidence, we cannot agree that the complained-of testimony prejudiced defendant.

¶ 30    We are unpersuaded by defendant's reliance on *Oliver*. In that case, the defendant moved to dismiss certain counts of an indictment, contending that an officer's testimony before a grand jury was "false and misleading" when it was not based in the officer's personal observations, but rather his examination of another officer's report. *Id.* at 694. The trial court agreed, and dismissed certain counts.

¶ 31    On appeal, this court found the defendant was denied due process by the presentation of "deceptive evidence" when the officer explicitly stated at one grand jury proceeding that he witnessed hand-to-hand transactions between the defendant and others, and testified at another proceeding "as if he was conveying his personal observations" when he was actually relating what another officer observed. *Id.* at 691-95. We concluded that the evidence was inaccurate and "mischaracterized the observations of the actual eyewitness so as to establish probable cause where

none existed" because the testifying officer stated that the transactions led him to believe that defendant possessed and intended to deliver cocaine. *Id.* at 697. However, as the officer who witnessed the transactions did not see what was exchanged, there was "no basis" for the testifying officer to draw that inference. *Id.*

¶ 32    Unlike *Oliver*, in the case at bar, Duszak testified regarding his personal interaction with defendant rather than that of another officer. We find *People v. Rebollar-Vergara*, 2019 IL App (2d) 140871, a case with similar facts, to be instructive.

¶ 33    In that case, the defendant moved to dismiss the indictment when the State asked a police officer whether " 'the two defendants were arrested?' " and " 'did make confessions, is that correct?' " and the officer answered both questions affirmatively. *Id.* ¶ 15. The motion alleged that the defendant was prejudiced when no other evidence presented to the grand jury suggested that the defendant was involved in the shooting.

¶ 34    The trial court denied the motion after reviewing surveillance footage, videotaped statements of the defendant and a co-offender, and the grand jury testimony. According to the court, certain questions were " 'not exactly a model of clarity,' " but there was " 'sufficient probable cause before the grand jury' " to indict the defendant for murder. *Id.* ¶ 30

¶ 35    On appeal, the defendant contended that the indictment should have been dismissed when the evidence at the hearing showed that he did not confess or flash gang signs and the officer's testimony to the contrary improperly affected the grand jury's deliberations.

¶ 36    This court concluded that the indictment's validity did not rely on whether the defendant explicitly confessed to being accountable for his co-offender's actions or flashing gang signs at the victim, and even if the officer's grand jury testimony was "inaccurate," the defendant was not

prejudiced. *Id.* ¶¶ 62-63. Relevant here, the court "disagree[d] that the officer's affirmation of the word 'confession' was presumptively prejudicial and reversible error." *Id.* ¶ 64. As the State advised the grand jury of the proposed charges and the pertinent law, we declined to presume that " the grand jury believed that a 'confession' was an acknowledgement of guilt beyond a reasonable doubt and not an acknowledgement of facts that supported a finding of guilt beyond a reasonable doubt or even probable cause that [the] defendant committed the offense." *Id.*

¶ 37    On a practical note, this court observed that the defendant was convicted without any mention of a confession at trial, and thus, there was clearly enough evidence to indict him, even absent the officer's imprecise testimony before the grand jury. *Id.* ¶ 70. Moreover, the trial court viewed certain surveillance and interview videos. *Id.* ¶ 71. We therefore concluded that defense counsel strategically introduced these videos in support of the motion and to undermine the officer's testimony, and "[t]o disregard that evidence, introduced by counsel and considered credible by the trial court, would amount to advocacy" on the defendant's behalf. *Id.*

¶ 38    We further concluded that the grand jury would have indicted the defendant even absent the officer's testimony based upon the defendant's admissions that he was a former gang member, "trash" talked a rival gang member, and accompanied the co-offender into a parking lot intending to fight the victim. *Id.* ¶ 72. Therefore, there was "no unequivocally clear denial of due process resulting in actual and substantial prejudice." *Id.* We agreed with the trial court that the officer's testimony could have been presented more clearly and did not "condone the ambiguities" in the State's questions, but concluded that the defendant failed to meet his burden to show that the error was " 'unequivocally clear' and resulted in 'actual and substantial' prejudice." *Id.* ¶ 73 (quoting *Oliver*, 368 Ill. App. 3d at 694-95).

¶ 39    Here, similar to *Rebollar-Vergara*, the indictment did not rest solely rest upon whether defendant made an admission. Although the State posed a two part-question about whether defendant stated the firearm was his and there was a lot going on in the area, and Duszak gave only one affirmative response, the grand jury also received evidence that the firearm and ammunition were recovered from a vehicle defendant was driving. In other words, absent the complained-of testimony, there was sufficient evidence to support the indictment.

¶ 40    Moreover, at the hearing on the motion to dismiss the indictment, the trial court considered not only the grand jury testimony, but also the dashcam video of defendant's arrest and the arrest report indicating that defendant stated that Smith " 'has nothing to do with that. There[']s alot [*sic*] going on around here and it is what it is.' " Although, as in *Rebollar-Vergara*, the officer's testimony could have been presented more clearly, defendant has failed to establish an unequivocally clear denial of due process resulting in actual and substantial prejudice. We therefore conclude that the trial court correctly denied the motion to dismiss the indictment when the remaining evidence was sufficient to support the indictment. *Oliver*, 368 Ill. App. 3d at 696-97.

¶ 41    Defendant next contends that there was insufficient evidence to find him guilty beyond a reasonable doubt of UUWF and possession of a firearm with defaced identification marks based upon his "physical proximity" to the firearm and ambiguous statements at the scene.

¶ 42    When reviewing a challenge to the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307,

319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts presented at trial. *Id.* "In reviewing the evidence, this court will not retry the defendant, nor will we substitute our judgment for that of the trier of fact." *Id.* A defendant's conviction will be reversed only when the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of his guilt. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 43    A person commits UUWF if he "knowingly possess[es] on or about his person or on his land or in his own abode or fixed place of business *** any firearm or any firearm ammunition if the person has been convicted of a felony." See 720 ILCS 5/24-1.1(a) (West 2016). The offense of possession of a firearm with defaced identification marks is defined as the possession of "any firearm upon which any such importer's or manufacturer's serial number has been changed, altered, removed or obliterated." 720 ILCS 5/24-5(b) (West 2006).

¶ 44    When a defendant was not found in actual possession of a firearm or ammunition, the State must prove he constructively possessed them. *People v. Sams*, 2013 IL App (1st) 121431, ¶ 10. Constructive possession exists where the defendant had (1) knowledge of the presence of the contraband, and (2) immediate and exclusive control over the area where the contraband was found. *Id*. Knowledge may be inferred from surrounding circumstances, including the defendant's actions, declarations, or other conduct indicating that he knew of the contraband's presence where it was found. *Id.* " Control is established when a person has the 'intent and capability to maintain control and dominion' over an item, even if he lacks personal present dominion over it." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17 (quoting *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992)). Control over the area where the contraband was found supports an inference that the defendant

possessed the contraband. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). "Evidence of constructive possession is 'often entirely circumstantial.' " *Id.* (quoting *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002)).

¶ 45     "Knowledge and possession are questions of fact to be resolved by the trier of fact, whose findings should not be disturbed upon review unless the evidence is so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of guilt." *People v. Luckett*, 273 Ill. App. 3d 1023, 1033 (1995).

¶ 46     Defendant contends that his mere physical proximity to the loaded firearm cannot establish constructive possession when it was recovered from a locked glovebox in a vehicle that he did not own, a passenger was present, and no fingerprints were recovered from the firearm.

¶ 47     Viewed in the light most favorable to the State, there was sufficient evidence for a rational trier of fact to find that defendant controlled the vehicle. Although defendant did not own the vehicle, he was driving when Duszak and McDonald curbed it. See *People v. Chavez*, 327 Ill. App. 3d 18, 26 (2001) ("it is control of the vehicle rather than ownership *** which is pertinent to proof of control of the area" in which contraband was found). That defendant was not alone was not fatal to a theory of constructive possession. "The law is clear that the exclusive dominion and control required to establish constructive possession is not diminished by evidence of others' access to the contraband." (Internal quotation marks omitted.) *People v. Givens*, 237 Ill. 2d 311, 338 (2010). "When the relationship of others to the contraband is sufficiently close to constitute possession, the result is not vindication of the defendant, but rather a situation of *joint* possession." (Emphasis in original.) (Internal quotation marks omitted.) *Id.*

¶ 48    Having determined that the State sufficiently proved that defendant controlled the vehicle, we now examine whether the evidence was sufficient to show his knowledge of the firearm.

¶ 49    An inference of knowledge arises when the contraband is located in a place where the defendant had "regular ongoing, control" and it is "an item human experience teaches is rarely, if ever, unaccountably in such a place." *People v. Hampton*, 358 Ill. App. 3d 1029, 1031-33 (2005). A defendant's "mere presence in a car, without more," does not establish knowledge of a firearm therein. *People v. Bailey*, 333 Ill. App. 3d 888, 891 (2002). However, knowledge may be proven through actions that create the inference that a defendant knew that the contraband existed in the place where it was found. *Spencer*, 2012 IL App (1st) 102094, ¶ 17.

¶ 50    Here, in addition to driving the vehicle, defendant made statements to the effect that the police should release Smith, who did not have anything "to do" with the situation, there was a lot happening in the neighborhood, and " 'it is what it is.' "[4] Although defendant argues that none of these statements permit a reasonable inference of guilt and provides non-inculpatory explanations, a trier of fact is not required to disregard inferences which flow normally from the evidence or to search out all possible explanations consistent with innocence and raise them to the level of reasonable doubt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60.

¶ 51    We are unpersuaded by defendant's reliance on *Bailey*. In that case, the defendant was the passenger in another person's vehicle when police officers found a firearm beneath his seat. *Bailey*, 333 Ill. App. 3d at 889-90. The firearm was not visible to the defendant and he made no movements

---

[4] We decline defendant's invitation to consider an article regarding the etymology of the phrase "it is what it is," as this article was not presented to the trial court. See *People v. Mehlberg*, 249 Ill. App. 3d 499, 532 (1993) ("A reviewing court must determine the issues before it on appeal solely on the basis of the record made in the trial court."); see also *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 55 (2001) (documents not submitted to the circuit court are not properly a part of the record on appeal and therefore cannot be considered on appeal).

when officers approached. *Id.* at 892. The appellate court considered four non-exclusive factors in finding insufficient proof that the defendant knew of the firearm: "(1) the visibility of the weapon from defendant's position in the car, (2) the period of time in which the defendant had an opportunity to observe the weapon, (3) any gestures by the defendant indicating an effort to retrieve or hide the weapon, and (4) the size of the weapon." *Id.* at 891-92.

¶ 52    Given the different circumstances in the current case, specifically, that the firearm was recovered from a locked glovebox, the *Bailey* factors are inapposite. Moreover, while the evidence of defendant's constructive possession of the firearm and ammunition was circumstantial, and his fingerprints were not recovered from the firearm, there is no requirement that physical evidence tie defendant to the contraband. Indeed, evidence of constructive possession is often entirely circumstantial. See *McCarter*, 339 Ill. App. 3d at 879.

¶ 53    Here, the totality of the evidence at trial, including defendant's presence in the vehicle and his numerous statements to the police, established knowledge and control over the firearm and ammunition to support a finding of constructive possession. In finding defendant guilty, the trial court characterized defendant's statements that Smith should be released and was not involved, and his instructions to Smith not to speak to the police, as efforts to protect her and indicative of defendant's knowledge of the only contraband recovered. Accordingly, viewing the evidence in the light most favorable to the State, we cannot say that no rational trier of fact could have concluded that defendant constructively possessed the firearm and ammunition. The evidence supporting the finding that defendant was guilty of UUWF and possession of a firearm with defaced identification marks was not so unreasonable, improbable, or unsatisfactory that

reasonable doubt of his guilt remains, and therefore, his challenge to the sufficiency of the evidence fails. See *Newton*, 2018 IL 122958, ¶ 24.

¶ 54 Defendant finally contends, and the State concedes, that his conviction for possession of a firearm with defaced identification marks must be vacated pursuant to the one-act, one-crime rule when it is based upon possession of the same firearm as the UUWF conviction. Defendant acknowledges he failed to preserve this issue by not raising it before the trial court. See *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010) ("to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required"). However, he asks this court to review his claim pursuant to the plain error doctrine.

¶ 55 Under the plain error doctrine, this court may review unpreserved error when an error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." (Internal quotation marks omitted.) *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). A violation of the one-act, one-crime rule constitutes second-prong plain error. *People v. Coats*, 2018 IL 121926, ¶ 10.

¶ 56 Pursuant to the one-act, one-crime doctrine, multiple convictions are improper if they are "based on precisely the same act." *In re Angel P.*, 2014 IL App (1st) 121749, ¶ 66. However, multiple convictions are proper "where a defendant has committed several acts, despite the interrelationship of those acts." *People v. King*, 66 Ill. 2d 551, 566 (1977). "[A]n 'act' is defined as any overt or outward manifestation that will support a separate conviction." *People v. Almond*, 2015 IL 113817, ¶ 47. When analyzing one-act, one-crime issues, we first determine "whether a defendant's conduct consisted of separate acts or a single physical act." *People v. Rodriguez*, 169

Ill. 2d 183, 186 (1996). Whether a conviction should be vacated under the one-act, one-crime doctrine is a question of law reviewed *de novo*. *In re Angel P.*, 2014 IL App (1st) 121749, ¶ 63.

¶ 57    As discussed, a person commits UUWF if he "knowingly possess[es] on or about his person or on his land or in his own abode or fixed place of business *** any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." See 720 ILCS 5/24-1.1(a) (West 2016). The offense of possession of a firearm with defaced identification marks is defined as the possession of "any firearm upon which any such importer's or manufacturer's serial number has been changed, altered, removed or obliterated." 720 ILCS 5/24-5(b) (West 2006).

¶ 58    We agree with the parties that defendant's convictions for UUWF based on his possession of a firearm and for possession of a firearm with defaced identification marks violate the one-act, one-crime doctrine because they were based on the single physical act of possession of the firearm. See *People v. West*, 2017 IL App (1st) 143632, ¶ 25. We note, however, that defendant's separate conviction for UUWF based on possessing firearm ammunition does not violate the one-act, one-crime doctrine. As explained by our supreme court in *People v. Almond*, 2015 IL 113817, ¶ 48, "the act of possession of a firearm is materially different from the act of possession of firearm ammunition, even if both items are possessed simultaneously." Thus, in *Almond*, the defendant's convictions for armed habitual criminal based on possessing a firearm and UUWF predicated on possessing ammunition did not violate the one-act, one-crime rule because the defendant "committed two separate acts—possession of a firearm and possession of firearm ammunition." *Id.* ¶¶ 45, 48.

¶ 59    Having found that defendant's convictions violate the violate the one-act, one-crime rule, we must determine which offense is the most serious (*People v. Artis*, 232 Ill. 2d 156, 170 (2009)), as "judgment and sentence may be entered only on the most serious offense" (*People v. Smith*, 233 Ill. 2d 1, 20 (2009)). To determine the most serious offense, we compare their relative punishments. *Artis*, 232 Ill. 2d at 170.

¶ 60    The parties do not dispute that UUWF is the more serious offense, and we agree. As charged in this case, UUWF is Class 2 felony with a sentencing range of 3 to 14 years (720 ILCS 5/24-1.1(e) (West 2016)), whereas possession of a firearm with defaced identification marks is a Class 3 felony with a sentencing range of 2 to 5 years (720 ILCS 5/24-5(b) (West 2016); 730 ILCS 5/5-4.5-40(a) (West 2016)). Consequently, defendant's sentence for possession of a firearm with defaced identification marks must be vacated.

¶ 61    For the foregoing reasons, we vacate defendant's sentence for possession of a firearm with defaced identification marks and affirm the judgment of the trial court in all other aspects.

¶ 62    Affirmed in part; vacated in part.